GARR vs. GOMEZ.

Where, after a suit in chancery by the complainant as the *endorsee* of certain bills of exchange accepted by the defendant, had progressed to an order of reference to a master to state an account, the *complainant* assigned all his estate and effects as an insolvent debtor, and it was then agreed between the solicitor for the complainant and the defendant to submit the question to the master whether or not the suit could be further prosecuted *in the name of the complainant*, it not being stated in the bill or otherwise appearing in the cause that the complainant sued in *autre droit;* and if he should be of opinion that it could not, then it was agreed by the solicitor, as the attorney and of *counsel for and acting in behalf of the holders and owners* of certain acceptances, the subject matter of the suit, on the one part, and the defendant on the other, that all claims and demands upon or relating to the acceptances, and all matters of set-off, should be referred to the arbitrament of the master; and the master determined that the *suit did abate* by the assignment, that the *complainant* in the suit in chancery was the true and *lawful holder of the acceptances*, and that the defendant was bound to account to *him* for the monies in his hands belonging to the drawer of the bills at the time of the acceptances, and certified a balance as due from the defendant *to the complainant;* and an action was brought upon such award *in the name of the complainant*, to which the defendant *pleaded*, that after the drawing, accepting and endorsing the bills of exchange, and previous to the submission, the complainant *assigned* all his estate and effects, as an insolvent debtor, to assignees, who thereby became the *true and lawful holders and owners* of the bills of exchange; IT WAS HELD, that the decision of the master that the suit abated by the assignment was correctly made; that the reference of *all claims and demands upon or relating to the acceptances* authorized the arbiter to determine that the complainant was the *true and lawful holder* of the bills of exchange, and that the defendant was *estopped* by the submission and award from pleading that the assignees were the true and lawful holders of the bills.

*It was further held*, in this case, that there is a distinction between the reference of a collateral or incidental matter of appraisement or calculation, and the submission of matters in controversy for the purpose of a final determination; that the latter, and not the former, is a *submission to arbitration;* that a plea that a plaintiff in an action of assumpsit assigned all his property as an insolvent debtor *after the making of the promises* set forth in the declaration is good, although the promises are laid as of a day subsequent to the discharge, the day laid in the declaration not being material; that if, after an assessment of contingent damages by a general verdict, one of the counts in the declaration be adjudged bad on demurrer, leave will not be given by a court of review to enter a *nolle prosequi* as to such court;

and that where there is a general verdict and judgment on several counts, some good and some bad, the judgment will be *reversed*, although the presumption is that the damages were assessed under the good counts only; but in such case, costs of the writ of error will not be adjudged to the defendant, and a *venire de novo* will be awarded: the plaintiff, however, will be required to pay the costs of the former trial.

ERROR from the supreme court. Gomez sued Garr, and in his declaration, after reciting that a certain suit in equity was pending between him as complainant and the defendant, and that certain differences existed between them, as well as to *the right of the plaintiff* further to prosecute such suit *in his name*, as of and concerning certain acceptances made by the defendant upon two certain bills of exchange, drawn upon him and another person by one A. Holbridge, in favor of two individuals, who had endorsed the bills to the plaintiff, and of and concerning certain matters of set-off claimed by the defendant in his answer and otherwise averred, that for the putting an end to such differences, he and the defendant, on the 23d *November*, 1826, entered into an agreement in writing, entitled in the chancery suit, signed by the defendant in his proper person, and by and in the name of H. S. Mackay, solicitor for and in behalf of the complainant, by his direction and assent; by which it was agreed, after admitting that the complainant, on the 30th *October*, then last past, *assigned* all his estate and effects to three persons, (naming them,) assignees appointed by the recorder of New-York, under the *act to abolish imprisonment for debt in certain cases*, that the question should be submitted to Thomas Bolton, master in chancery, upon the pleadings and papers in the cause, *whether the suit in chancery could be further prosecuted by the plaintiff or not*, it not being stated in the bill, or otherwise appearing by the proceedings in the cause, that he sued in *autre droit*, or on behalf of some other person or persons; that should the master be of opinion that the plaintiff could, notwithstanding his assignment, continue to prosecute the suit, then that he should proceed under the rule of reference, theretofore made therein, to hear the parties and make a report, and the cause should be set down for hearing, on the report at the next

term ; that should the master be of opinion that the plaintiff could not further prosecute his suit, then it was agreed between H. S. Mackay, *attorney and of counsel for and acting on behalf of the holders and owners* of the two acceptances, and the said defendant, *that all claims and demands upon or relating to the acceptances, and all matters of set-off* or defence to such claims and demands, should be referred to the arbitrament of the said Thomas Bolton, who should, on such arbitration, not only take into consideration the credits claimed by the defendant in his answer, but should also credit him certain payments specified in the agreement ; and in case of any sum being awarded to be paid by the defendant, time should be given him for the payment of the same until the 30th day of July then next. In consideration whereof, and of the promise of the plaintiff to abide by and perform the award of the arbitrator, to be made between them, of and concerning the differences aforesaid, on his part to be done and performed, the defendant undertook and promised the said plaintiff to abide by and perform such award in all things on his part to be performed. The plaintiff then averred that on the 15th July, 1827, the arbitrator made his award, and did thereby *award*, arbitrate and determine that the suit in chancery did abate by the assignment made by the plaintiff ; that the plaintiff was the true and lawful holder of the two bills of exchange ; that the defendant was therefore *bound to account to the plaintiff* for the monies in his hands belonging to the drawer of the bills at the time of their acceptance, being the sum of $1564,31 ; that the defendant was entitled to certain credits, (particularly enumerated in the award,) and that these being deducted, left the *balance due from the defendant to the plaintiff*, $1492,07 ; that each party should pay his own costs of the suit in chancery ; and that the costs of the arbitration, amounting to $34,14, should be paid by them in equal shares, each paying half ; the whole to be advanced by the plaintiff, and the one half charged to the defendant ; and he further awarded that the said sum of $1492,07, and $17,07, the moiety of the expenses of the arbitration, should be paid by the defendant *to the plaintiff;* and that the pay-

ment should be a perpetual bar and discharge of *all claims and demands of the plaintiff*, as the holder of the bills of exchange, and of the several other matters by the agreement submitted. Notice of the award was averred, and breach of performance alleged. There was also a count for money lent, &c. and another on an account stated.

The defendant pleaded 1. *Non-assumpsit;* 2. That after the drawing, accepting and endorsing of the bills of exchange in the *first count* of the declaration set forth, to wit, on the 11th August, 1826, the plaintiff presented a petition to the recorder of New-York, to be discharged as an insolvent debtor, under the " act to abolish imprisonment for debt in certain cases;" that on 30th October, 1826, the recorder directed an assignment of the estate of the plaintiff to certain persons, (naming them,) as assignees, and that on the same day, before the making of the award in the first count mentioned, the plaintiff *did assign all his estate, real and personal,* both in law and equity, &c. to the persons named by the recorder, to and for the use of the creditors of the plaintiff; by reason whereof *the assignees became the true and lawful holders and owners* of the bills of exchange, and entitled to the monies due thereon; 3. *Actio non,* as to first count, because the plaintiff *was not,* at the time of the making of the agreement in the first count of the declaration mentioned, *the holder and owner* of the said acceptances; and 4. To the *second* and *third counts* of the declaration, the defendant put in a plea similar to his *second* plea, averring that *after* the making of the promises and undertakings in those counts mentioned, the plaintiff executed the assignment directed by the recorder, and stating that by reason of the assignment, the assignees became entitled to the debts, sums of money or causes of action in those counts mentioned.

The plaintiff demurred to the special pleas, and before the argument of the demurrer, tried his issue of fact under the general issue, and assessed contingent damages on the issues of law. After the trial, the demurrer was argued, and judgment given by the supreme court for the plaintiff. See 6 *Wendell*, 583. Whereupon the defendant sued out a writ of error.

The cause here was argued by

*J. L. Wendell,* for the plaintiff in error.

*H. S. Mackay,* for the defendant in error.

The following opinions were delivered :

By the CHANCELLOR. The counsel for the plaintiff in error supposes the necessary effect of the decision of the arbitrator that the suit abated by the assignment, was to show that Gomez had no right to receive or collect the balance due on the acceptances, and that such balance belonged to the assignees. I apprehend, however, that no such result follows, and that this part of the decision of the arbitrator is perfectly consistent with his award that Gomez was the true and lawful holder of the bills, and that Garr was bound to account with him and pay him the balance due on the bills. It very frequently happens that a person is the lawful holder of negotiable paper as the mere naked trustee of another and for the purpose of collecting the same in his own name for the benefit of the real owner, and if a suit at law is brought in the name of such holder, the defendant cannot object that the plaintiff is not the real owner. In such a case if the holder of the notes or bills is discharged under the insolvent act, no interest or right in the securities passes to his assignees, and the holder may continue an action at law previously commenced for the recovery thereof, in his own name, or may bring a new suit without reference to the assignment. The course of proceeding is different in chancery. As a general rule, a mere naked trustee is not permitted to bring a suit there in his own name alone without bringing the *cestui que trust* before the court. The mere naked holder of a bill of exchange or other negotiable security is not permitted to bring a suit in that court in his own name ; but the suit must be commenced in the name of the real party in interest. If a suit in chancery therefore is pending in the name of an insolvent on a negotiable security, the legal presumption is that he is the owner as well as the holder thereof, and he cannot be permitted

to contradict the presumption in that suit, as it would show that his bill was improperly filed, and not sustainable. By a discharge of the complainant under the insolvent act his whole interest in the subject of litigation passes to his assignees, and unless it appears on the face of the bill that he sues in *autre droit*, the suit abates, or becomes so defective that it cannot go on until the assignees bring themselves before the court by a supplemental bill in the nature of a bill of revivor. *Williams* v. *Kinder*, 4 *Vez. R.* 387. *Porter* v. *Cox*, 5 *Mad. R.* 80. And if the nominal complainant has no interest in the suit, so that nothing passes to the assignees by the assignment, they cannot sustain a supplemental bill. It follows that in such a case the suit must be considered as absolutely at an end, or at least in such a situation that the complainant can never proceed any further therein. I presume that the arbitrator arrived at the conclusion that the suit in chancery respecting these bills was thus circumstanced; and he accordingly proceeded to decide the rights of the parties under the other branch of the agreement.

Under that branch of the agreement it was submitted to him to determine upon all claims and demands upon, or relating to the acceptances, and all matters of set off or defence, and it became his duty to decide the question whether Gomez was the true and lawful holder of the bills to collect the balance due thereon for the benefit of the equitable owners thereof. In answer to this claim of Gomez the other party was at liberty to controvert that fact before the arbitrator by showing that the beneficial as well as the legal interest in these bills passed to the assignees under the insolvent act, and that the assignees had not authorized Gomez to retain or collect the securities for them. Gomez on the other hand was at liberty to show that he held the bills for the benefit of other persons, and that he was authorized to collect the amount due thereon for their use. The award of the arbitrator has decided that fact, and Garr was estopped by the award from pleading the first special plea, controverting the fact thus determined by the arbitrator. The decision of the arbitrator on that subject was conclusive between the parties, and the estoppel appearing upon the face of the declaration, the objection of the

plea was properly taken by demurrer. *See Roscoe on Real Actions*, 471. The same objection exists to the second special plea, which is also defective in another respect: it avers that the plaintiff at the time of the making the agreement of submission was not the holder and owner of the acceptances; whereas he had the right to make the submission if he was either the lawful *hoder* or the *owner* of these negotiable securities.

The second and third counts of the declaration were merely the common counts for money lent, &c. and on an account stated. As no reference whatever is made in these counts to the arbitration and award, the defendant was not estopped from pleading, that after the making of the supposed promises mentioned in those two counts, the plaintiff was discharged under the insolvent act and assigned over his property. This was *prima facie* sufficient to transfer the right of action on the promises mentioned in those counts to the assignees, and to deprive Gomez of his right of action therefor. If the demands which were intended to be given in evidence under those counts in fact belonged to a third person, so that they did not pass to the assignees under the assignment, the plaintiff should have replied that fact, which would have been a sufficient answer to this plea. By the demurrer, he admits he had no right to prosecute upon the promises set out in the second and third counts, and that his whole interest therein, as well as the right of action thereon, had passed to the assignees. The distinction between these counts, and the special count on the award which was made after the assignment, was evidently overlooked by the supreme court, and could not have been brought distinctly to their notice by the counsel who argued the cause. The time laid in the common counts not being material, the plaintiff was at liberty to prove a promise made before the assignment although the time stated in those counts was subsequent. The defendant was therefore at liberty to aver that the assignment was after the making of those promises; although he shows the assignment to have been made on a day previous to that on which the promises are alleged to have been made. Judgment should therefore have been given for the defendant on the demurrer to the third special plea.

As the special pleas demurred to went to different counts in the declaration, the demurrer may be taken distributively so as to declare the two first special pleas insufficient to bar the plaintiff's action to the count to which those pleas are pleaded, and that the third special plea is sufficient to bar the action as to the second and third counts.

The only difficulty in this case arises from the fact that general damages are assessed upon all three of the counts together, so that the court cannot know judicially what part of those damages have been given upon the common counts, as to which the last plea is a valid bar. I presume no damages whatever were given by the jury except what might have been given in evidence under the first count, and is probable that this is an objection of mere from which cannot alter the rights of the parties. But acting as we must from what appears upon this record, it is impossible to sustain a judgment founded upon this general verdict. The final judgment of the supreme court must therefore be reversed, and the judgment on the demurrer must be modified so as to declare the first and second special pleas not sufficient to bar the action of the plaintiff as to the first count, and that the last special plea is sufficient to bar the action as to the second and third counts.

Where there is a general verdict on several counts, some of which are good and others bad, the court awards a *venire de novo* to try the issue and to assess the damages on the good counts, upon payment of the costs of the former trial; *Hopkins* v. *Beedle, Caines' R.* 347; *Barnes' Notes,* 478, 480; and the *venire de novo,* in such a case, may be awarded by a court of error. *Grant* v. *Astle,* 2 *Doug. R.* 731. That case is analogous in principle to the one now before the court, and I think a *venire de novo* should be awarded here. As the costs on the writ of error where a *venire de novo* is awarded are in the discretion of the court, and we ought not to encourage parties to come here upon mere technical defects in the proceedings of the court below which do not impair any of their substantial rights, I think neither party should have any costs on this writ of error.

By Mr. Senator ALLEN. The important question in this case appears to be, to whom did the bills of exchange belong? Were they the property of the insolvent, Gomez, or of others for whom he held them, or were they the property of his assignee, to whom on the 30th of October, 1826, he assigned all his estate, including his books, vouchers and securities? The bills it appears were drawn by Holbridge upon Garr, the plaintiff, and one Gillespie, one of them payable to Lord and the other to Dickson, and by them endorsed over to Gomez. Previous to the assignment of the insolvent's estate, he had brought a suit in chancery on these bills, against the plaintiff in this court, and after his discharge under the act, it being doubtful whether he could continue the suit in his own name, he, by his counsel Mackay, and the plaintiff in error, agreed to submit to Mr. Bolton, whether the suit in chancery could be further prosecuted by the defendant in error; and if not, then Bolton was to audit the claims and demands and matters of off-set relating to the bills. Mr. Bolton decided that the suit in chancery abated on Gomez, making his assignment under the act; that Gomez was the true and lawful holder of the bills in the agreement referred to, and that the defendant in the court below was bound to account with the plaintiff Gomez for the balance due on them. He then states the balance to be paid to the plaintiff Gomez, or to his attorney, solicitor and counsel in the agreement named, upon their or either of their receipts.

There is nothing in the agreement that I can perceive, which authorized Mr. Bolton to declare that the defendant in error was the true and lawful holder of the bills, and that the plaintiff was bound to account with him for the balance due; nor is there any thing authorizing him to arbitrate as to the costs of the suit in chancery. The submission was not made by rule of court, and the question to be settled being simply whether the suit in chancery could proceed, and if not, what was the balance due on the bills after setting off the payments made; and this having been submitted to a single person only, shows, as I think, that it could only be considered as an agreement between the parties, to obtain the opin-

ion of Bolton on the matters referred to him, and not an award of a binding nature. Mr. Bolton must have viewed the question in this light himself, for he designates the instrument as the "*said agreement,*" and not as a *submission.* Neither does it appear by the case that the parties were heard before Mr. Bolton previous to his making up his opinion or award ; and it was held, 5 *Cowen,* 103, that an award made without giving notice to the parties, so that they can be heard before the arbitrator, is a nullity.

The act provides if any person shall conceal or protect any of the estate of the insolvent, after notice of assignment is published, and does not deliver it up to the assignees, he shall pay a fine of double the amount so concealed or protected. The assignees of a bankrupt may take advantage of an award made in favor of the bankrupt, and the power of an insolvent to sue upon any cause of action arising previous to his discharge, and involving a claim in relation to his estate, is taken away from the insolvent debtor, and passes with his estate to his trustees, in whose name it must be brought ; and their refusal to act does not give the insolvent the right to sue, although empowered by the creditors. *Kyd on Awards,* 49. *Ingraham on Insolvency,* 172. If these acceptances composed a portion of the insolvent's estate under the designation of "vouchers and securities," all of which were assigned by the general terms of the instrument, then it is a question whether the unsatisfactory manner in which the interests in them are represented as existing in unknown persons, will not amount to a concealment. But if the securities as such are out of the question, and the demand sued for in the court below merged them in the balance audited by Bolton, may not the assignees of the insolvent claim the balance awarded ? And again, is not the suit brought by the insolvent in direct opposition to the law ? The agreement, we are told, was signed by the plaintiff in error, and by Hay S. Mackay, Esquire. Now it appears to me, that Mr. Mackay is acting in this agreement in more than one capacity ; first, it is said he signed by and in the name of Hay S. Mackay, solicitor for and in behalf of the complainant, by his direction and assent. Here he signs for Gomez solely ; then again it is said that it was agreed be-

tween Hay S. Mackay, Esquire, attorney and of counsel for and acting on behalf of the holders and owners of the two acceptances, &c. Mr. Bolton, it is true, had decided that Gomez was the true and lawful holder, but who the owners are does not appear. If Mr. Mackay was acting only for the holders and owners, then, in my opinion, Mr. Bolton ought to have directed the money to be paid to him, and not to Gomez; but having directed it to be paid to either of them shows, as I think, that Gomez was considered as having an interest in the matter; and if he had it belonged to his assignees, and not to him after his assignment. The legal interest of an insolvent debtor in a contract is, by the express provisions of the different insolvent acts, vested in the persons to whom his estate is assigned, and who are expressly empowered to sue. *Chitty's Pl.* 17.

The agreement to submit the question in controversy to Mr. Bolton, was not an agreement between three persons, but between two; and Gomez, if he had no beneficial interest, as the supreme court seem to intimate, was a stranger to the submission, and the award of Bolton that the money should be paid to Gomez was illegal. The award of payment of money to a stranger or one not a party to the submission, is void. *Kyd on Awards,* 153.

But it is admitted that the suit in chancery was in the dedefendant's own name; he then at least must have been the owner of the bills while that suit was pending. He took the benefit of the insolvent act on the 30th of October, 1826, and the suit was still pending in chancery in his own name, and continued so until the 23d of November following, when the question was submitted to Mr. Bolton to say whether he could carry on the suit in his own name, he having assigned all his property and taken the benefit of the insolvent act. In a case in 2 *Dallas,* 276, the plaintiff brought an action of trover in 1794 to recover a claim which had originated in 1784; in 1785, he had obtained a discharge under the insolvent laws of Pennsylvania aft r making a general assignment for the benefit of all his creditors. It was held that the action could not be maintained by the plaintiff in his own name, and a nonsuit was directed. The assigns of an insolvent debtor can alone

ALBANY,
Dec. 1832.

Garr
v.
Gomez.

sue on his contracts, but they may proceed to judgment and execution in the name of the insolvent, where the suit was commenced before the assignment. The supreme court say that it appears on the face of the sudmission admitted that Gomez had no beneficial interest in these bills, but that he acted throughout in the matter on behalf of others. If this fact does appear on the face of the submission or agreement, I have been unable to discover it ; but I think I have discovered that the court have been compelled to labor hard to find reasons for the conclusion they have arrived at. The matter is not decided as one in which there was no doubt, and therefore it is that the judge who delivered the opinion uses the words, " I am inclined to think," and " I think the plaintiff is entitled to judgment." That the facts in this case are not so clearly shewn as to fix a positive conviction on the minds as to the undoubted rights of the parties, I am willing to admit ; and in cases of similar import with the present, and under the facts as sent up to us from the court below, I consider it my duty to lean towards the creditors, who in most cases of insolvency, are the injured parties. On the whole, I am enabled to view the matter in no other light than an attempt to evade the just claim of the creditors of the insolvent to his money. That the notes were the property of the defendant is admitted in the declaration, as it is there averred that Lord and Dickson respectively endorsed them over to him ; he files his bill in chancery to enforce the payment of the bills to himself ; he finds that after his insolvency, he cannot continue the suit in his own name, and therefore submits the case to Bolton, and then, for the first time, we hear that Mr. Mackay is acting on behalf of the holders and owners of the two acceptances, although he previously is represented as signing the agreement for and in behalf of the complainant, and by his direction and assent, and as we are not told who these holders and owners are, we have a right to conclude that they are no other than the defendant in this court, in whose name the suit in the court below was brought ; and if he was not the holder and owner, I think it follows that the suit ought to have been brought in the names of the real holders and owners of the acceptances. The plaintiff in error, as I understood

his counsel, is ready to pay the balance due to the rightful owners; but he has reason to fear, should he pay it to the defendant, he may be called on for a re-payment by the assignees, and he comes here to obtain a reversal of the judgment below, so that the payment may be made to those to whom in justice and equity it belongs; and as the best opinion I am able to form is, that it rightfully belongs to the creditors of the insolvent, I will vote for a reversal of the judgment of the supreme court.

By Mr. Senator Seward. The first point made by the plaintiff in error is, that the reference to Thomas Bolton was not a submission to arbitration, but merely an agreement by which it was referred to him to ascertain the amount due on the acceptances, and that his report has none of the characteristics of an award, and no action will lie upon it. That act is called "a submission," by which parties refer any matter in dispute between them to the decision of a third person; the person to whom the reference is made is an arbitrator; the judgment pronounced by an arbitrator is an award. *Kyd on Awards*, 21. The submission and award in the present case are clearly within these definitions. A distinction is justly made between the reference of a collateral or incidental matter of appraisement or calculation, the decision of which is conclusive of nothing as to the rights of the parties, except the mere appraisal or statement and a submission of matters in controversy for the purpose of final determination. This distinction is indirectly suggested in the case of *Elmendorf* v. *Harris*, 5 *Wendell*, 522, and is more plainly stated in a note under the same case by the reporter. The distinction as there stated, and I think correctly, is, that a reference of a collateral fact, or the submission of a particular question forming only a link in the chain of evidence, is not calculated to put an end to the controversy; it barely substitutes the judgment of the referee in in the place of evidence (and it should be added) on that incidental or collateral matter, leaving the controversy open. Such a decision is not an award, and a reference of such a matter is not a submission to arbitration; but the reference in this case is not of so contracted a character.

A submission may be either in writing or verbal; and in declaring upon an award, averments may be made to shew the nature of the controversies submitted, and to explain what does not sufficiently appear on the face of the submission so as to enable the court to ascertain the true object of the submission. In this case, the declaration avers that a suit was pending in the court of chancery, wherein Gomez was complainant and Garr was defendant, and certain differences had arisen and were pending between them, concerning as well the right of the plaintiff to prosecute or continue the suit in chancery by and in his name against the defendant, as touching certain acceptances made by the defendant upon two bills of exchange, drawn by one Helbridge upon and and addressed to the defendant and one Robert Gillespie, the one payable to William C. Lord and the other to Alexander C. Dickson, and by them endorsed to the plaintiff; and concerning certain matters of set off, credits and payments claimed by the defendant. These facts in the existing state of the pleadings must be admitted to be true, and they show sufficient matters of controversy between the parties to be the subject of a submission. It remains to be seen whether they were in sufficient form referred to the decision of an arbitrator; and here it is to be observed that it is not material whether the submission was imperfect so as to fail in securing to the parties remedies as ample as courts of law would give. We are to find that matters in controversy were referred to an arbitrator for his final decision. The declaration avers that the reference was for the purpose of putting an end to the differences, and this averment is to be taken as true, unless the submission shows that such was not the intention the parties. By the submission, it is referred to Mr. Bolton, upon the pleadings and papers in the chancery cause, to determine whether the said suit could be further prosecuted by the plaintiff or not; if Mr. Bolton should decide that the suit could be so prosecuted, then his powers as an arbitrator ceased, and the suit in chancery should proceed, he, Bolton, making report therein in pursuance of the order of reference already made in the cause. In that contingency nothing further was referred to Mr. Bolton. It is obvious, then, that thus far the submission here was no

more than withdrawing from the decision of the court of chancery an incidental or interlocutory question which arose in the prosecution of the suit in chancery, and in the event of his deciding that the suit could be prosecuted, he could make no award which would settle and determine the controversies; but the parties anticipated his decision that the suit could not be prosecuted, and provided for a further consideration of the matters by him in that event. If Mr. Bolton should decide that the suit could not be further prosecuted, then it was agreed that all claims and demands upon or relating to the acceptances, and all matters of set off or defence to such claims and demands should be referred to the arbitrament of Mr. Bolton; directions were given him as to the allowance of certain credits, and that he should make an *award* against Garr of the amount he should find due upon the acceptances, is clear from the language of the submission; and in case of any sum being awarded to be paid by the said defendant, time should be given him for the payment of the same until the 30th of July then next. Here, then, subject to the contingency of Mr. Bolton deciding that the chancery suit could be prosecuted, is a reference of all the matters in controversy in the chancery suit to the arbitrator upon which he was to award; and the preliminary decision being made that the chancery suit abated, the arbitrator was to make an award which of course must end the controversy, because it would leave nothing to be litigated between the parties. The report of Mr. Bolton assumes to decide almost all the matters in controversy, and is an award in *substance* as well as *form*, upon which an action well lies, if it be not obnoxious to some of the objections urged against it by the counsel for the plaintiff in error.

It is contended, however, that the award is void; and first, because it awarded the sum found due *to be paid to Gomez*, when, as the counsel insist, it appears by the same instrument that Gomez had no longer any interest in the matter. Although the declaration as well as the submission is obscurely expressed, I think it is not difficult to discover from them that these acceptances may have been the property of some person

ALBANY,
Dec. 1832.

Garr
v.
Gomez

other than Gomez, who was the nominal holder for the purpose of collection. It has been often decided that the holder of a note or bill of exchange may maintain an action in his own name as trustee for the owner, although Mr. Bolton in this case rightly decided that Gomez could not maintain a suit in equity. If he were competent to maintain an action at law, he was competent to refer to arbitration ; an award that the amount found due should be paid to him, would protect Garr from the claim of the real owners. if he paid without notice, and *a fortiori* is he protected inasmuch as Mackay the attorney for the real owners is a party to the submission.

Secondly; it is urged that the award is void, because it adjudes that Gomez was the *true and lawful holder* of the bills of exchange, a point it is said not submitted, and on which the award is also in direct contradiction to what is admitted by both parties in the submission. This objection seems to possess no more merit than that just noticed. What is called the adjudication that Gomez was the holder, taken in connection with the decision that the chancery suit abated, is a mere declaration that Gomez, though not the owner in his own right of the acceptances, was a lawful holder of the same as trustee, to whom payment might be made.

A third reason assigned why the award. is void, is, that it contains no mutuality ; that payment to Gomez of the sum awarded will be no bar to a suit by his assignees. What was the situation of the parties ? Gomez had brought a suit in chancery against the defendant upon these acceptances. Pending that suit, he became insolvent and assigned his property. It does not appear on the face of the bill that Gomez sued in *autre droit*. Wherefore, the parties submit whether that suit can be prosecuted; and if it cannot, then Garr agrees with Gomez, the nominal plaintiff or trustee, and with the attorney of the persons in interest, to submit the whole matter in controversy to arbitration. After that submission, he is estopped from again contending that Gomez was the real owner, and his interest had gone to his assignees. So far as the submission and award go, then, it is obvious that the defendant Garr admits, and the award establishes the right of

Gomez, as holder of the acceptances, to demand the amount due.

The fourth point made on the part of the plaintiff in error is, the declaration is defective in not averring that H. S. Mackay was *authorized* by the holders and owners of the acceptances to submit the matters in controversy. There should have been, it is said, an averment to that effect, and the *names* of the holders and owners should have been stated, in order that the defendant might take issue upon the fact of such authorization. It is a sufficient answer to this point that Gomez being the holder of these notes as trustee, could lawfully submit the matter in controversy. And the introduction of the name of Mackay as the attorney for and on behalf of the real owners was for greater caution, to show that the acts of Gomez were accompanied with their assent. If after the submission and award Garr will still question the authority of Gomez or of Mackay, the attorney, it is not going too far to say that he should take upon himself to affirm by plea the want of authority.

The substance of the first special plea is, that after the drawing, accepting and endorsing of the bills of exchange, and before the award, Gomez made an assignment in pursuance of the act to abolish imprisonment for debt in certain cases ; by reason of which premises, and by force of the act, the assignees became and are the holders and owners of the bills of exchange. This plea, and the other similar pleas the supreme court overrule on demurrer, upon the ground that the decision of the arbitrator that the question who was the holder and owner of the bills, was within the submission, and therefore conclusive. The submission substantially recites that Gomez was prosecuting these suits in *autre droit*, or on behalf of some other person or persons. Those other persons, by their attorney and counsel, were parties to the submission. The award directs the payment of the bills of exchange to Gomez, and is, when taken in connection with the submission, to be understood as directing the payment to Gomez, as trustee for the other person, who were the real parties in interest.

The award, then, in directing the ˌpayment to be made to Gomez, merely proceeds upon what was admitted by the submission. The award is conclusive, of the liability to pay Gomez and the defendant cannot be admitted to raise a question which is rendered *res judicata* by the award. The same principle applies to the second special plea, which was, therefore, I think, properly overruled.

Together with the count on the award the declaration contains a second and third count, the common money counts. To these counts the defendant below pleaded that the plaintiff, after the making of the said supposed promises and undertakings in the second and third counts mentioned, and before the commencement of the suit, had executed an assignment of all his estate under the act to abolish imprisonment for debt in certain cases. To this plea also the plaintiff has demurred, and the only ground upon which the demurrer can be sustained is, that the promises in those counts are alleged to have been made on the 31st of July, 1827, which was after the assignment of October, 1826, stated in the plea. The counsel for the defendant in error contends that the plea is therefore false in fact, and for that reason demurrable. To this it is answered that the day laid in the declaration is not material, and the averment in the plea that the assignment was made after the promises, controls on the question of time. The supreme court consider the demurrer well taken to this plea, but I am reluctantly compelled to say that their reasoning upon it is not satisfactory to my mind. It is very certain that the day laid in the declaration is not material ; under these counts promises could be given in evidence made in 1826, before the assignment. The plea, in order to show that the cause of action was assigned, must show that it existed before the assignment. This might be by an averment that the promises were made before the assignment, and not afterwards, as stated in the declaration. No averment to that effect could be more distinct than the averment contained in the declaration. I consider the plea good, therefore, and judgment should have been rendered thereon in favor of the defendant below. But the supreme court say, "if the defendant consider this count

though general, as being for the same cause of action embraced in the first count, then the reasons applicable to the plea to the first count are applicable to this, and therefore the demurrer is on that ground well taken." With all deference it must be observed that it is not for the defendant to determine that under the money counts the cause of action relied upon, is the same as that in the first count. The court knows that under those counts other and different causes of action may have been proved. We cannot assume that the cause of action was the same, and therefore the reasons applied to the other plea will not avail here.

But the plaintiff has proceeded to trial upon the issues of fact, and had an assessment of contingent damages upon all the counts subject to the decision of the court upon the demurrer to all the special pleas, and he now asks leave to enter a *nolle prosequi* upon the common counts, and to correct the record so that judgment will appear to be recovered only on the first count ; against which course the supreme court say they perceive no legal objection. The authorities, however, are opposed to this position as collected in 1 *Paine & Duer*, 188. On a similar application in the case of *Robinson* v. *Raley*, 1 *Burr*. 316, Mr. Justice Denison said, " We cannot amend where the proceedings are upon record. There was never an instance of such an amendment. I wish we could, because the merits seem to be with the defendant." And I can truly say in this case, I wish we could, and for the same reason. Nevertheless, in my judgment, we cannot allow the amendment. If the court had discretion, we have no facts before us to direct us in the exercise of it. In the case of *Booth* v. *Smith*, 5 *Wendell*, 108, it is stated by the court that the plaintiff went to trial at the risk of losing his verdict.

I am therefore of opinion that the judgment of the supreme court ought to be reversed ; but concur in the direction proposed to be given to this case by the chancellor, viz. that a *venire de novo* be awarded.

By Mr. Senator TRACY. There is some difficulty in getting at the precise nature and terms of the submission, which

ALBANY,
Dec. 1832.

Garr
v.
Gomez.

is attempted to be stated in the first count of the declaration; either it was very vague and imperfect, or it has been very inartificially presented in the pleading; but still, I think sufficient is shown to enable us to reach a correct conclusion in the present case.

That it was competently submitted to Mr. Bolton to determine whether the chancery suit had abated, appears plainly enough; but the defendant denies that it was submitted for him to decide who was the true and lawful holder of the bills of exchange, and that in deciding Gomez to be the true and lawful holder, he exceeded the power conferred, and therefore the award out of which in this respect the present suit has arisen is void. Although a submission to arbitrament is to be liberally construed, 2 *Caines' Rep.* 320, yet if there be an award on a subject not submitted, the award *pro tanto* at least is void; and it is also true that, to entitle a party to benefit by an award, he must be shown to be bound by it; for mutuality of obligation undoubtedly is the essence of such submissions. The latter principle, however, has been rather pressed into the argument, for it is incontrovertible that Gomez was a party to the submission; the declaration alleging expressly that the agreement of submission was signed for him by his solicitor, Mr. Mackay, "by his direction and assent;" and as to the mutuality of that part of the award directing the payment of the money, there can be no doubt; for the principle is well settled, that an award of the payment of money is mutual, though nothing is said of a release, for the payment of itself operates as a relase; but here it is expressly awarded, that it "shall be a full, final and perpetual bar, release, acquittance and discharge." The fact that it does not bar any one's right but Gomez' does not affect the question, as will be shown hereafter. But it is insisted that the part of the agreement which authorized Bolton to ascertain the amount due, &c. being made by Mackay "on behalf of the holders and owners of the two acceptances," was not a submission by Gomez, inasmuch as he was not a holder and owner. This is assuming as settled one of the most important questions which it was intended the arbitrator

should settle ; for it was expressly submitted to him to determine " *all claims and demands upon or relating to said acceptances,*" which necessarily included any claim which Gomez might have as owner *or* holder. To authorize a different conclusion, it should appear that Gomez was precluded by the very terms of the submission from any claim or demand, while so far from it, he was the regular endorsee of the acceptances, and notwithstanding his assignment under the insolvent act, might, if he acted in *autre droit*, as the case induces the presumption he did, be the legal holder entitled to collect them at law ; consequently, the award that he was " the true and lawful holder," and that the defendant " was therefore bound to account to and with him," for the balance due, was strictly according to the terms of the submission, and doubtless according to the facts of the case. The provision, too, in the submission, that " in case of any sum being awarded to be paid by the said defendant, time should be given," &c. necessarily implies authority in the arbiter to decide to whom it was due and should be paid. I am looking at this case now as if it were before us on a demurrer to the first count of the declaration, for the effect of the defendant's special pleas is to admit the allegations it contains the same as a demurrer ; it being a fundamental maxim of pleading, that a special plea in bar, affirming a fact in avoidance of the action, admits the cause of action stated in the declaration. *Raymond* v. *Wheeler,* 9 *Cowen,* 295. In this view, I cannot doubt that the first count shows a legal right of action, and that the plaintiff is entitled to recover on it, unless barred by matters alleged in the pleas, and which I will now briefly examine.

The first plea to this count states that after the drawing, accepting and endorsing the said bills of exchange, the said plaintiff being an insolvent debtor, did, in pursuance of the act to abolish imprisonment for debt, &c. and before making the award in said first count mentioned, to wit, on the 30th of October, 1826, duly assign all his property to certain assignees, who, by force of said assignment, " then and there became, and were *and still are,* the true and lawful holders and owners of the said bills," &c. It will be seen at once, that if

ALBANY,
Dec. 1832.

Garr
v.
Gomez.

the first count of the declaration be not bad on demurrer,
this plea is ; for it states no fact in bar but what occurred
previously to the time when the plaintiff's cause of action
arose, except it be that the assignees " still are the true
and lawful holders," &c. ; and this fact, if it were compe-
tent for the defendant to allege it, could not affect the plain-
tiff's action.   The plaintiff does not, as the argument has
seemed to suppose, sue on the bills of exchange, but on the
award ; and as this was under a submission made on the 23d
day of November, 1826, almost a month after the assign-
ment, it cannot be affected by it.   Whether, if the submis-
sion had been previously to the assignment, it would have
vitiated an award made after it, is at least doubtful, the case
of *Marsh* v. *Wood*, 9 *Barn. & Cres.* only showing that where
a party becomes a bankrupt subsequent to a submission, and
his estate is assigned, the other party *may revoke* the sub-
mission.   But this question it is unnecessary to consider in
a case like this, where the submission, being after the assign-
ment, is no more affected by it than if it had never been
made.   The allegation that the assignees, " now are the true
and lawful holders," &c. at best amounts to no more than
an allegation that the plaintiff was not, which would be bad,
1. Because it is an allegation against the award itself, which
is that the plaintiff was the true and lawful owner, and which
estops the defendant from alleging that he was not ; 2. It
impeaches the award, and it is a well established principle
that nothing *dehors* the award can be shown to invalidate it.
*Elmendorf* v. *Harris*, 5 *Wendell*, 516 ; 3. If it were. true
and allowed to be proved, it would be no defence, for the
plaintiff's right of action is complete in the award, whoever
may be the real holder and owner of the bills.   And this
leads me to dispose of one objection to the plaintiff's
right of recovery, which was strongly urged on the ar-
gument, that if he should recover, the defendant may
have to pay the amount of the bills again to the assig-
nees, or to those for whom the plaintiff held them in trust, or
to both.   There is nothing in the facts which appear in the
case to justify such an apprehension, but much from which to

infer that every party in interest intended the whole matter should be finally disposed of by the arbitrator. But if such were the case, and it were now certain that the defendant would have to pay the money over again to some other per-son, it would not affect the plaintiff's legal rights in this suit. It may happen, though I have no idea it has happened in this case, that a party has arbitrated with a false claimant to property, and after an award against him, been compelled to pay for the same property to the real owner. But such a fact certainly could not be set up as a defence against the award. The same hardship is not unfrequently inflicted in courts of law, as in a recovery in trover by one claimant, and an after suit by another, who proves himself to be the rightful owner.

The second plea to this count is clearly bad, for at most it would amount only to the general issue ; but for the reasons before given, the single allegation it contains, that the plaintiff was not, at the time of the submission, the holder and owner of the acceptances, is immaterial ; and consequently the demurrer to it is well taken.

But it is difficult as respects the third special plea, which is not to the first count, but to the second and third or common counts of the declaration, and which alleges the plaintiff's assignment to have been " after the making the said supposed promises and undertakings in the said counts mentioned." It is not to be controverted, that if so were the fact, and by the demurrer it is admitted to be, the right of action passed from the plaintiff to his assignees, and by the provisions of our statutes, *Laws of* 1819 *a.* 117, and 1 *R. L. of* 1813, *p.* 468, the suit must have been brought in their names.

It is not, in my judgment, a satisfactory argument that the defendant's indebtedness is alleged in these counts to have accrued and this promise to have been made on the 31st of July, 1827, and that the assignment is alleged in the plea to have been made in October, 1826 ; for although it is true, as the supreme court says, " that an assignment made in October, 1826, could not affect a cause of action which accrued and a promise which was made in July, 1827, nine months afterwards ;" yet it is true that the plea alleges distinctly the

assignment to have been *after the promises were made* and the cause of action accrued, and it is equally true that the day stated in the declaration was not issuable, the principle being almost too trite to be quoted, that in assumpsit the day is immaterial, whether stated under a *videlicit* or not. 6 *T. R.* 265. 1 *Chitty's Pl.* 309. If the plaintiff designed to controvert that the assignment was subsequent to the promise, he should have repl.ed ; but by demurring, he confesses it. I am not sure that I understand the other reason given for sustaining the demurrer to this plea, where the supreme court says, that " if the defendant consider this count, though general, as being for the same cause of action embraced in the first count, then the reason already stated in relation to the pleas to that count are applicable to the plea to this." But I am sure that I do not perceive any cause why the defendant should consider, or any evidence that he has considered, these counts to refer to the same cause of action. It is not improbable that they do, but in law the presumption is that they do not ; and as the plaintiff chose to combine different causes of action in his declaration, it was the defendant's right and duty so to meet them, and as such his pleas show that he has done so. The court below erred also in supposing that the plaintiff could relieve himself from his demurrer to this plea by entering a *nolle prosequi* upon the common counts. He had already gone to trial upon the general issue and got a verdict on all his counts, and for any thing that appears, the evidence applied to the common counts exclusively. But however this may be, the record is now before us, showing a judgment for the plaintiff on his demurrer to all the pleas, and this judgment, I am satisfied, is erroneous and should be reversed.

But as it is the duty of this court to give such judgment as the court below should have given, and as I think the demurrer to the pleas to the first count well taken and the plaintiff entitled to judgment on that count, and as the supreme court cannot apply the verdict of the jury which was on the whole declaration to this particular count, I think a *venire de novo* should be issued to have the damages ascertained in reference to this count, and for that purpose the record should be remit-

ted. This practice is warranted on the principle that where a judgment is arrested for a general verdict, where some counts are good and some bad, a *venire de novo* will be a-warded. *Hopkins* v. *Beedle*, 1 *Caines*, 349.

The counsel for the plaintiff in error prayed to be heard on the question of the award of a *venire de novo* before the court pronounced judgment, and he was indulged. He in-sisted, with all deference to the intimations in the opinions which had been read, that in a case like the present, the plaintiff below was not entitled to a *venire de novo*. That the rule is, where judgment is given in the court below a-gainst the defendant and he brings a writ of error, the judg-ment in the court of error, if given for him, is *quod judicium reversitur ;* but if the judgment in the court below were giv-en against the plaintiff, and he bring a writ of error and suc-ceed, the judgment below is not only reversed, but the court of error gives such judgment as the court below ought to have given, and cited 1 *Archbold's Pr. tit. Writ of Error (Judgment) and the cases there collected.* He contended that on the reversal of a judgment, a *venire de novo* was awarded only in one of the following cases : 1. Where the plaintiff brought error ; 2. When there was a special ver-dict ; 3. An imperfect verdict ; 4. Demurrer to evidence ; and 5. A bill of exceptions. And he cited the following cases as instances to support this position : 3 *T. R.* 27 ; *Cowp.* 89, 91 ; 2 *Str.* 1051 ; *id.* 1124; 1 *T. R.* 34 & 783, *S. C. ;* 2 *id.* 53 & 125, *S. C. ;* 5 *id.* 367 ; 1 *Wendell*, 64 ; 5 *id.* 341 ; 6 *id.* 173. He insisted that not a case was to be found in the English reports, where a *venire de novo* had been a-warded on the reversal of a judgment where entire damages had been given on separate counts, some good and some bad, except the case of *Grant* v. *Astle, Douglas,* 722, de-cided in 1781, which case was condemned by counsel in 1 *T. R.* 528, as not warranted by the old authorities; and *Buller*, J. upon whose suggestion the order was made in *Grant* v. *Astle*, afterwards, in 1789, in *Hancock* v. *Haywood*, 3 *T. R.* 435, in the most unqualified terms admits, that on a writ of error where one count appears bad and the verdict is entered gen-

erally on all the counts, the court must reverse the judgment *in toto*, since they cannot see on which of the counts the damages were given. Besides, the case of *Grant* v. *Astle* comes within one of the exceptions, in which it is admitted that it is according to the practice of the court to award a *venire de novo*, for that was a verdict subject to the opinion of the court on a case reserved, and therefore in substance a special verdict.

At a subsequent day, the following opinions were delivered on the question of a *venire de novo :*

By the CHANCELLOR. In some of the early cases it is said, if the defendant brings a writ of error, and the judgment against him is reversed, the appellate court cannot award a *venire de novo*, or give any other judgment than a mere judgment of reversal ; leaving the plaintiff in the court below to seek his remedy by a new suit. *See Parker* v. *Harris*, 1 *Salk.* 262 ; *Steele* v. *Hopkinson*, 2 *Str.* 1055 ; *Cumming* v. *Sibley*, 4 *Burrow's R.* 2489. This however cannot be considered as the law at the present day ; for it has frequently been decided, both here and in England, that upon a writ of error, whether the same is prosecuted by the plaintiff or the defendant in the court below, the court of errors upon a reversal of the judgment, may proceed and give such judgment as the court below ought to have given ; and may award a *venire de novo*, if necessary for the attainment of justice. When a judgment is reversed in this court, or in the exchequer chamber, or the house of lords in England, the practice is to direct the *venire de novo* to be awarded in the court below. *See Livingston* v. *Rogers*, 1 *Caines' R.* 586.

In the case of *Shrewsbury* v. *Kynerston*, 7 *Bro. P. C. Toml. ed.* 396, the writ of error was prosecuted by the defendant in the court below, and the judgment was reversed, for a defect in the verdict on which the judgment was rendered ; but the house of lords being against the plaintiff in error on the merits of the case, directed a *venire de novo* to be awarded in the court of king's bench. A similar decision was made in the case of *Haswell* v. *Chalie*, 2 *Str.* 1125, upon the reversal of a judgment of the king's bench upon a writ of error prosecuted

by the defendant in the court below. In *Green* v. *Bailey*, 5 *Munf. R.* 246, the court of appeals in Virginia, upon error brought by the defendant, not only reversed the judgment but also proceeded to give such judgment as the court below ought to have given, by awarding a repleader. So in the case of *Gardner's Administrator* v. *Vidal*, 6 *Rand. R.* 106, upon a writ of error brought by the defendant, the judgment was reversed on account of a defective finding of the jury, and a *venire de novo* was directed to be awarded. And in the case of *Ward* v. *Johnson*, 1 *Munf. R.* 45, a judgment of the circuit court was reversed by the court of appeals because the circuit court, upon a writ of error brought by the defendant, had reversed a judgment, but had not proceeded to give such judgment in favor of the plaintiff in the court below as ought to have been given there. Similar decisions have been made in several other of our sister states. *See Commonwealth* v. *Howard*, 13 *Mass. R.* 221. *Davenport* v. *Bradley*, 4 *Conn. R.* 311.

In the case of the *King* v. *Amery*, 1 *Anst.* 183, the house of lords propounded the question to the judges, whether, if the judgment of the court below be reversed on error, the appellate court must give the same judgment as the court below ought to have given ? And upon this question, which was general, and applied to a writ of error brought by the defendant in the court below, as well as to a writ prosecuted by plaintiff, Chief Justice Eyre delivered the unanimous answer of the judges in the affirmative. So in *Gildart* v. *Gladstone*, 12 *East's R.* 668, where the common pleas had given judgment for the plaintiff on a special verdict, the court of king's bench, upon a writ of error, reversed the decision of the common pleas. The question then arose whether the plaintiff in error was entitled to a mere judgment of reversal, or whether he should have a judgment in his favor upon the verdict, together with the costs of his defence in the court below, and upon argument the court of king's bench decided that he was entitled to such a judgment as the court of common pleas ought to have given, which of course included the costs of his defence in that court. In *Grant* v. *Astle*, 2 *Douglas, R.* 731, entire damages were given upon a declaration consisting

ALBANY,
Dec. 1832.

Garr
v.
Gomez.

ALBANY,
Dec. 1832.

Garr
v.
Gomez.

of several counts, some of which were good and others defective,.and the judgment was for this reason reversed ; but the court of king's bench held it was a proper case for a *venire de novo* to assess the damages on the counts which were good. And in the case of *Shaffer* v. *Kintzer*, 1 *Bin. R.* 546, which was also a case of general damages, where some of the counts of the plaintiff's declaration were bad, Tilghman, Ch. J. said the case of *Grant* v. *Astle*, was good law and good sense, and that he was willing to abide by it ; a *venire de novo* was awarded accordingly, in conformity to that decision. In the case of *Flower* v. *Allen*, in this court, 5 ·*Cowen*, 668, Spencer, senator,. refers to the same case, as well as to other English decisions, as establishing the principle that whenever a judgment is reversed upon some ground which does not involve the merits of the cause, a *venire de novo* is awarded of course to try those merits. And it appears by the report of the case of *Richardson* v. *Mellish*, 3 *Bing. R.* 346, that the court of king's bench had again followed the decision in *Grant* v. *Astle*, by awarding a *venire de novo* upon the reversal of a judgment, because some of the counts were defective, and general damages had been assessed. So in the recent case of *Bemus* v. *Beekman*, in this court, 3 *Wendell*, 676, where the judgment was reversed, on account of a defective finding of the jury as to some of the issues, a *venire de novo* was awarded, although the writ of error was brought by the defendant in the court below.

I have no doubt, therefore, that this court ought to authorize the issuing of a *venire de novo* to try the issue, and to assess the plaintiff's damages on the first count of his declaration ; as it was his own fault that the issue was tried before the judgment was given on the demurrer to the several pleas, he should not be permitted to have an award of such venire, except upon the terms of paying the costs of the formal trial.

By Mr. Justice NELSON. It is laid down in the books, and supported by adjudged cases, that if judgment be given against a defendant, and he brings a writ of error, upon which .the judgment below is reversed, the judgment shall

only be *quod judicium reversitur*, and the reason given is, that the writ of error is brought by the defendant merely to be discharged of the judgment below. *Bacon's Abr. tit. Error*, 503. This as a general proposition may be correct, and is founded upon the idea or assumption that the whole merits of the case are fully and finally determined by the decision in the court above, and that the plaintiff below has no cause of action. In such a case, judgment of reversal is the only action of the court necessary to a just and definitive settlement of the matters in litigation between the parties, and the result is the same as if the court below had done what they ought to have done, according to the decision of the court above, viz. given judgment against the plaintiff on the merits. But there are exceptions to this rule, if it may be called a general one, which are as thoroughly settled as is the rule itself, and upon as sound and conclusive reasons. Where the defendant brings the writ of error, and the court above sees that the judgment is not reversed upon the whole merits of the case of the plaintiff below, but upon a formal or technical question not involving the substantial ground of litigation, there the court order the court below to award a *venire de novo*. The reason is obvious. The plaintiff is entitled to the trial of his cause upon the merits : it would be a reproach to the administration of justice if he was not ; and this can be done with more convenience and less delay and expenses to both parties by awarding in the court below a *venire de novo* than by bringing a new suit. Indeed, it might frequently happen that without the continuance of the suit in the court to its final determination on the merits, the demand would be barred by the statute of limitations. When the cause is again remitted to the court below, the plaintiff may on application to it, or otherwise, disentangle his case from the nets of form and technicality and obtain a trial upon the merits. Whether the trial is had on the new venire ordered by this court, or on one in a new suit, is wholly immaterial, so far as the substantial rights or interests of the defendant are concerned. The difference may be very material as to those of the plaintiff, as has already been shewn.

ALBANY,
Dec. 1832.

Garr
v.
Gomez.

If the judgment is given against the plaintiff below, and he brings the writ of error, and the decision is in his favor, the judgment shall not only be reversed, but the court shall give such a judgment as the court below ought to have given, or order the award of a *venire de novo ;* and the reason is that the judgment of reversal revives the first cause of action. The right of the court to order a venire in such a case is not questioned. The reason, however, is no stronger for the venire than in the case where the defendant brings the writ of error and reverses the judgment below on ground which does not involve the plaintiff's cause of action.

Besides the authorities referred to by the chancellor, which are conclusive to support the exception here taken to the general rule, an authority will be found in *Bacon's Abr. tit. Error,* 505, *and cases there cited.* Mr. *Gwillim* in a note in his edition says, it is now settled, though it was in one case denied, that a court of error may award a *venire facias de novo ;* and this it may do after a bill of exceptions allowed upon demurrer to evidence, and after a general verdict where some of the counts are defective. There is no distinction here made as to parties : and in the case of a general verdict, where some of the counts were defective, the error must have been brought by the defendant. I have therefore no doubt of the power of the court to order the court below to award a new venire to try the cause on its merits. I take no part in the application of the rule to this particular case ; though I did not participate in the decision of the cause in the court below, yet it is one of those cases in which I am not a member of the court for the purpose of reviewing it here.

Whereupon, the court adjudged the plea of the defendant to the second and third counts of the plaintiff's declaration to be *good,* and the pleas to the first count to be *bad ;* and it appearing that the plaintiff had assessed general damages on all the counts, the *final judgment* of the supreme court, and so much of the adjudication of that court upon the demurrer to the several pleas as declared the plea of the defendant to the second and third counts to be bad, was *reversed,* and the resi-

due of the judgment of the supreme court upon the demurrer to the several pleas was *affirmed*, and judgment was given that as to the promises in the second and third counts mentioned, the defendant go thereof without day ; that a *venire de novo* issue from the supreme court to try the issue of fact, and assess the damages upon the first count of the declaration, upon payment by the plaintiff of the costs of the former trial ; and that neither party recover costs against the other upon the writ of error.

This order of the court was at a subsequent day modified so as to give leave to the plaintiff in error to apply to the supreme court for permission to amend his pleas or put in a new plea to the first count of the declaration, upon such terms as the supreme court should think proper to direct.