McMahon *v.* The New York and Erie Railroad Company.

Under a contract for the construction of a railroad, by which all measurements are to be made and the amount of labor determined by the employee's engineer, whose decision is final, the contractor is entitled to notice and the opportunity to be present; he is not concluded by measurements made *ex parte.*

A final estimate by the engineer being a condition precedent to payment, and his employer having refused to have a measurement made, or those already made reviewed by him, the contractor is not bound to call upon the engineer to make such estimate, but may recover upon other evidence of the amount of work.

A provision that the contractor should subscribe for and take an amount of the capital stock of the railroad corporation, equal to one-fourth of the amount received for work under the contract, construed as an independent covenant, and as not requiring the contractor to receive payment in stock.

The defendant having neglected to cause its engineer to make a final measurement and estimate of the work, when requested by the contractor, interest is allowable from the time of such default, though the amount was not liquidated nor capable of being ascertained by calculation merely, or by reference to ordinary market rates.

Where the decision shows that interest has been allowed from too early a date, the error should be specifically pointed out, so that the prevailing party may remit the excess. An exception in such a case to the amount construed as only a general exception to the allowance of interest.

Appeal from the Supreme Court. Action to recover for work performed and materials furnished by Patrick McMahon (who had assigned his claim to the plaintiff) in the construction of two sections of the New York and Erie Railroad. The trial

was before one of the justices, without jury and sitting in part out of term time, under a stipulation, substantially as referee. It appeared that the work was performed under a written contract, and was completed in October, 1848. A large part of it consisted of earth and rock excavation, of which three different classes were defined in the contract, a different price being stipulated for the execution of each class. The contractor had received monthly payments, according to the estimates, classifications and measurements made by the engineers of the defendant; and if these were correct, there was a very trifling sum due to him when the work was completed. The referee reported that there was due to the plaintiff the sum of $9,927.85 for which judgment was rendered. Upon appeal, the court at general term, in the third district, affirmed the judgment conditionally, upon the plaintiff stipulating to deduct $914.49, which he did, and the defendant appealed to this court. The material facts are sufficiently stated in the following opinion.

*D. B. Eaton*, for the appellant.

*John K. Porter*, for the respondent.

SELDEN, J. The decision filed by the referee in this case, consists of a series of mingled conclusions of fact and of law; and the printed Case contains no such statement of the facts found by him as will of itself enable this court to judge as to the accuracy of those conclusions. I find, however, appended to the Case, a printed paper, entitled in the cause and headed: "Statement of facts." It is not signed, nor in any way specially authenticated; but from its position, I shall assume, especially as against the appellant, by whom the papers are presented, that it is authentic, and shall follow it so far as practicable, and refer to the other parts of the case for the purpose of explanation only.

The first conclusion arrived at by the referee, as stated in his written decision is, "that there was no such measurement or classification of the work as to conclude the plaintiff," and

that "the amount and quality of the work, is, therefore, an open question, to be determined upon the evidence in the case."

To this part of the decision of the referee, the defendants have excepted; and to understand the ground of this exception, it is necessary to refer to the contracts under which the work was done. Each of the contracts, of which there were two, contained the following provision, viz.: "The work shall be executed under the direction and constant supervision of the engineer of the company, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and who shall have full power to reject or condemn all work or materials which in his opinion do not fully conform to the spirit of this agreement; and shall decide every question which can or may arise between the parties, relative to the execution thereof, and his decision shall be final and binding upon both parties."

Provisions analogous to this are very common in contracts of this description, and are inserted to prevent disputes in regard to the amount and character of the work performed; and to secure the accuracy of all measurements and calculations, by having competent persons to make them. They are free from any legal objection, and have frequently been held to be obligatory upon parties according to their terms. In principle, they do not differ materially from the provisions in question in the cases of *Smith* v. *Briggs* (3 *Denio*, 73), and *The United States* v. *Robeson* (9 *Peters*, 319). In the latter of those cases, in which the transportation of certain troops and stores for the government was to be paid for upon the certificate of the commanding officer of the troops as to the amount of the service, it was held that the certificate of the officer was a condition precedent to any right of recovery, and that the party must either procure the certificate, or show sufficient reason why it could not be obtained.

So here, where the amount of the work was "to be determined" by the engineer of the company, whose decision was to be final and binding upon the parties, it was incumbent upon the plaintiff to prove such a determination made, or else

to show something which would legally exempt him from the obligation. The proposition, therefore, contained in the decision of the referee, that " there was no such measurement or classification of the work as to conclude the plaintiff "—and therefore the amount and quality of the work was an open question, to be determined upon the evidence—requires some further explanation or qualification in order to be sustained. It states, taken by itself, a complete bar to any right of recovery by the plaintiff; because it negatives a condition precedent, the performance of which it was incumbent upon the plaintiff to prove, and suggests no excuse for its non-performance. We cannot look into the evidence, to ascertain the grounds upon which this proposition was based. Were it not, therefore, for a clause in the statement of facts appended to the Case, this exception would be fatal to the judgment. It is however there stated: " That such estimates, measurements, calculations and classifications as were made, were erroneous in fact, and were made *ex parte* without notice to Patrick McMahon, or the plaintiff, and without giving either of them an opportunity to be present; and that the defendants were requested to have estimates, measurements, calculations and classifications of the work made by the engineer, or to have those that had been made reviewed by him, which the defendants refused."

The first proposition of the referee, so far as its review by this court is concerned, rests exclusively upon this statement. The question presented, therefore, is, whether under such a provision on the subject of a final estimate as that contained in these contracts, the contractor or party doing the work has a right to be present when the measurements are made; or whether the engineer may proceed *ex parte*, and without giving any notice to the contractor, and make such estimate. I am not aware that this question has ever been decided. It is open, therefore, to the application of such principles as are best calculated to secure the rights of the parties. When it is considered, then, that the engineer who makes the estimate is the agent and employee of the defendants, selected by and receiving his compensation from them, and that his estimate, if legally

McMahon *v*. The New York and Erie Railroad Company.

made, is absolutely conclusive upon the rights of the plaintiff, it is too plain to be denied, that he ought in justice to have at least the opportunity of being present, when that in which he is so deeply interested is done. An arbitrator, although supposed to be entirely indifferent, can never proceed a single step without notice to the parties. The position of the engineer here, is not unlike that of an arbitrator; with this difference, that he is the selected and paid servant of one of the parties. Ought he then to be permitted to go on without notice to the other party? There can be but one answer to the question. As the contractor in such cases is dependent entirely upon the skill and integrity of the company's agent, he ought at least to have such protection as a right to notice may afford. I have no hesitation, therefore, in holding, that the *ex parte* estimate and measurement made in this case was not such a final estimate as would bind the plaintiff.

This conclusion alone, without some excuse on the part of the plaintiff for not having procured a proper final estimate to be made, would not support the decision of the referee. But such an excuse is afforded by the latter part of the paragraph in the statement of facts, already cited, which states that the defendants " were requested " to have estimates, measurements, &c., made, and that they "refused." It is to be inferred, undoubtedly, from this statement, that the request was made by the plaintiff or his assignor, the original contractor. This was all, I think, that it was incumbent upon the contractor to do. The engineer was entirely under the control of the company, subject to its order and moved by its will; and after the company had absolutely refused to direct him to make an estimate, or to review what he had already made, it would have been useless for the contractor to apply to him; and I think he was under no obligation to do so. The referee was justified, therefore, in considering the amount of the work an open question, to be determined upon the proof at large; and hence, this exception was not well taken.

It is insisted by the counsel for the defendants, that by the terms of the contract the plaintiff was bound to take payment

in the stock of the company, for one-fourth of the amount of labor performed; and that as there is no evidence that he ever called for or offered to take the stock, he could not recover for that portion of the work in money.   The language of that part of the contract upon which this position is based, is as follows: "The aforesaid party of the first part, is to subscribe for and take an amount of the capital stock of the New York and Erie Railroad Company, equal to one-fourth of the amount *received* for work under this contract."   This language is equivocal, and by no means easy of interpretation.   It seems not unlikely that the parties intended, that the contractor should receive payment in stock, to the extent of one-fourth of the labor performed; but they have not so said.   Literally construed, the clause in question means, not that the contractor was to receive payment for any part of his work in stock; but that he was to become a subscriber for stock to an amount equal to one-fourth the amount of his work.   The word "received," in the sentence quoted, points conclusively to this construction.   The amount of the subscription for stock was to be measured by the amount the contractor should actually receive in payment for his work.   It is not said that it should constitute but that it should be equivalent to one-fourth of that amount.   If this is not what the parties meant, they have failed to express their meaning in intelligible language.   It is urged that a different construction was put upon the clause by the contractor himself, as is shown by exhibits No. 10, T, and No. 10, U.   These exhibits are mere summaries of the plaintiff's account for work up to certain periods, in which the balances in favor of the plaintiff are stated as due in stock; to each of which a receipt is appended, signed by the contractor, acknowledging payment of such balance.   But in the first place, this court cannot go behind the finding of the referee on this subject, who is presumed to have passed upon this piece of evidence, and to have found it insufficient to control the construction to be given to the contract.   If, however, we were to look into the evidence, it would be found to be without force, as the receipts say nothing about the payment having been made in stock, but

are in their terms mere ordinary cash receipts. The referee was justified, therefore, in giving to the provision in question, as he evidently did, its literal interpretation; notwithstanding that, if he had speculated upon the subject, he might have been led to conjecture that something different was intended.

An exception was taken to the allowance of interest by the referee, and this is now insisted upon as fatal to the judgment. The old common law rule, which required that a demand should be liquidated, or its amount in some way ascertained before interest could be allowed, has been modified by general consent, so far as to hold that if the amount is capable of being ascertained by mere computation, then it shall carry interest; and this court in the case of *Van Rensselaer* v. *Jewett* (2 *Comst.*, 135), went a step further, and allowed interest upon an unliquidated demand, the amount of which could be ascertained by computation, together with a reference to well established market values; because such values in many cases are so nearly certain, that it would be possible for the debtor to obtain some proximate knowledge of how much he was to pay. That case went, I think, as far as it is reasonable and proper to go in that direction. So long as the courts adhere even to the principles of that case, they are not without a rule which it is possible to apply. The rule itself is definite, and the only uncertainty which it introduces is that which necessarily attends the settling of market rates and prices. In the present case, the plaintiff's demand was neither liquidated nor capable of being ascertained by computation merely; nor could its amount be determined by any reference to ordinary market rates, and hence interest could not be recovered here upon the principle adopted in the case of *Van Rensselaer* v. *Jewett*.

There is, however, another ground upon which interest sometimes is allowed, and perhaps with propriety may be, although the amount of the demand neither has been nor can readily be ascertained, viz.: that the debtor is in default for not having taken the requisite steps to ascertain the amount of his debt. The present case is one which strongly illustrates the reasonableness of such a rule. Whether the engineer, by whom the

work was to be measured, is to be legally regarded in respect to that duty, as the agent of both parties, or of the defendants only, he was in the general employment of the defendants, and ready to obey their behests.  If they had done their duty, by causing him to make an accurate estimate of the work, the amount of the claim would have been so ascertained as to have carried interest.  Perhaps they ought not to be considered as in default until they were requested by the contractor to have an estimate made; because it was as much his duty to request to have it done, as it was theirs to direct the engineer to do it. Interest, therefore, if allowed upon this principle, should be computed only from the time of the refusal by the defendants when called upon, either to cause a final estimate to be made, or to correct that already made.  The inference from the "statement of facts" is, that this refusal must have been after the making of the estimate, introduced and relied upon by the defendants upon the trial, and that bears date in March, 1849; while the referee has computed interest from the 1st of October previous, making at least five months' interest, which in this view of the case was improperly allowed.

But the defendants here are not in a position to avail themselves of this error, if it be an error, for want of a proper exception.  The only exception on the subject of interest is in these words: "To that part of said decision which allows $3,342.15 as interest."  This cannot be considered as anything more than a general exception to the allowance of any interest whatever upon the plaintiff's claim.  The decision of the referee shows from what time interest was computed, and if the defendants intended to object to the time, they should have made their exception specific.  Had they done so, the plaintiff might have remitted the excess, and thus avoided the consequences of the error.  Judgment will not be reversed for a mere excess in any allowance, when the amount of such excess is definite and certain, and the party in whose favor it is allowed is willing to remit it.  The error, therefore, should be pointed out by exception, so as to give the party the earliest opportunity to make his election to remit.

McMahon *v.* The New York and Erie Railroad Company.

The case shows another error of lesser magnitude, of which the defendants cannot avail themselves for a similar reason. The Supreme Court, at general term, directed a deduction from one of the items allowed to the plaintiff, amounting to $916.49, but omitted to deduct the interest upon it.   Interest was computed by the referee upon the whole amount allowed, and of course, if too much was allowed, the interest upon the excess should have been deducted.   But there is no exception under which this court can make the deduction.   The only exception on the subject of the amount, aside from that taken to the allowance of interest, is the following, viz.: "To that part of the decision which authorizes the plaintiff to enter judgment for $9,927.55."   The decision filed by the referee particularized the item from which the deduction was made.   The defendants, therefore, had the means of making the exception specific, and should have done so, for the reasons given in considering the previous exception.   It makes no difference that the Supreme Court chose to make the deduction without an exception, and that the deduction of the interest is necessary to carry out the principle upon which that court acted.   As this court could not, consistently with the rules it has adopted, have made the original deduction without a specific exception, it cannot for the same reason add to the deduction made.

These are all the exceptions which I deem it necessary to consider.

The judgment must therefore be affirmed.

All the judges concurring,

Judgment affirmed.