WILLIAM B. WHITEMAN, AS EXECUTOR, AND ELIZABETH JONES, AS EXECUTRIX, &C., OF EDWARD JONES, DECEASED, AND WILLIAM B. WHITEMAN, PLAINTIFF, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, DEFENDANTS.

*Building contracts—agreement that the engineer's certificate shall be final and conclusive—such a certificate can only be attacked for fraud, or bad faith on the part of the engineer.*

Where, from the terms of a contract for the construction of a dam, it appears that the parties have agreed upon and adopted the decision of an engineer, therein named, as a final and conclusive arbitrament of all disputes and litigations that should arise in respect to the kinds or quantity of the several parcels or kinds of work to be done, and have by express stipulation made the certificate of the engineer a condition precedent to the right of the contractor to demand and recover, and to the liability of the other party, to pay

---

the compensation therein provided, such certificate is, in the absence of fraud, or bad faith, final and conclusive, and it cannot be attacked or impeached on the ground that the engineer erred in deciding the questions submitted to him.

Motion for a new trial upon a case containing exceptions directed to be heard in the first instance at the General Term.

*O. W. West*, for the appellants.

*William C. Whitney* and *F. L. Stetson*, for the respondent.

Davis, P. J.:

The contract upon which this action is brought was made in the year 1866. It provided for the construction, by the assignors of the plaintiff's testator, of a dam and appurtenances in the town of Kent, Putnam county.

The contract contains a large number of specifications as to the parts of the work to be done, and the manner in which the same was to be performed. This action relates solely to the stone masonry done upon the work. The contract provided for the kind of stone to be used in the masonry, and that all the masonry should be hydraulic masonry of the best quality ; and in substance that the masonry should be "rubble range," "cut range," and "dimension cut stone masonry." It specifies for what these several kinds of masonry were to be used in the walls and other parts of the work, and it defines with particularity how the rubble range, cut range, and dimension cut stone masonry were to be constructed and laid.

Early after the commencement of the work, a controversy seems to have arisen between the contractors and the engineer in charge as to the accurate description of the kind of masonry then laid, and being laid, and as to the amount which the contract required to be paid therefor ; the contractors claiming that certain portions of the masonry which the engineer would only estimate as rubble range masonry, were in fact cut range masonry under the definitions of the contract ; and that certain other portions which the engineer would only estimate as cut range, were in fact dimension cut stone masonry. The engineer in chief seems to have been

called in by the contractors to pass upon the question, and his decision was favorable to the construction given by the engineer in charge. This state of things in respect to the controversy seems to have continued throughout the work and until the completion thereof; and the final estimate was made by the engineer in accordance with his views as to which class the particular kinds of work estimated, belonged. The plaintiffs were ·finally paid in accordance with the engineer's estimate; and after the lapse of more than six years, commenced this action to recover the difference in price between the several kinds of masonry, upon the ground that the estimates and certificates of the engineer were not conclusive upon the question as to the kind or character of the work done. The court below held that the estimates and certificates were conclusive, and directed a verdict accordingly, for the defendants, when the plaintiffs rested their case.

The contract provided in various parts of it for the control and direction of the work by the engineer, and the estimates to be made by him, and the payments to be made thereupon; and that " whenever, in the opinion of the engineer, the party of the second part have completely performed this contract on their part, said engineer shall certify the same in writing to the parties to this agreement, together with his estimate, embracing both stipulated and extra work, as herein provided, on which the said party of the second part is to be paid."

It contains also the following provision:

" And it is further expressly agreed that no money shall become due and payable under this contract except on the certificate of said engineer, as herein provided; and the said party of the second part further agree that they shall not be entitled to, demand or receive payment for any portion of the aforesaid work or material, except in the manner set forth in this agreement, nor until each and every of the stipulations hereinbefore mentioned are complied with, and the engineer shall have given his certificate to that effect; whereupon the parties of the first part will, at the expiration of twenty days after such completion and delivery of said certificate, pay, and they hereby bind themselves and their successors to pay, the said party of the second part in cash, the whole amount of money

accruing to the said party of the second part under this contract, excepting such sum or sums as may be lawfully retained under any of the provisions of this contract hereinbefore set forth."

The contract also contained a provision in these words:

"To prevent all disputes and litigations, it is further agreed by and between the parties to this contract, that said engineer shall in all cases determine the amount or the quantity of the several kinds of work which are to be paid for under this contract; and he shall determine all questions in relation to lines, levels, and dimensions of work; and he shall in all cases decide every question which may arise relative to the execution of this contract on the part of said contractors; and his estimate and decision shall be final and conclusive."

Collating and considering these several provisions together, it cannot be doubted that the contracting parties have agreed upon and adopted the decision of the engineer as a final and conclusive arbitrament of all disputes and litigations that should arise under the contract, in respect of the kind or quantity of the several parcels of work to be paid for under the contract; and of every question which might arise relative to its execution on the part of the contractors; and they have made his decision upon these questions final and conclusive. In addition to this they have by express stipulation made the certificate of the engineer a condition precedent to the right of the parties of the second part to demand and receive payment for the work.

In such cases it is an established principle, that no court will undertake to try any of the questions embraced within these provisions of the contract which have been passed upon by the engineer, for the purpose of determining whether his decision was or was not correct. It is only where fraud and bad faith are shown, on the part of the engineer or arbitrator selected by the parties, in making his official decision, that courts will attempt to interfere. This rule was well expressed in *Butler* v. *Tucker* (24 Wend., 447), in these words: "When parties fix on an umpire, and agree to abide his decision, neither of them, without the consent of the other, can withdraw the question of performance from the common arbiter for the purpose of referring it to the decision of a jury." The questions

in such cases received a very full and careful consideration by the Court of Appeals in the case of the *President and Directors of the Delaware & Hudson · Canal Co.* v. *Pennsylvania Coal Co.* (50 N. Y., 250), in which the duty of the court to give full effect to the intention of the parties as clearly indicated by the agreement in such cases, where the covenants or agreements provide for an adjustment and settlement of all disputes and differences to the exclusion of the courts, as well as the effect to be given to conditions precedent expressed in such contracts either in terms or by necessary implication, are pointed out and enforced. The cases on the subject are quite numerous, and need not be quoted from at length. (See *McMahon* v. *New York & Erie R. R. Co.*, 20 N. Y., 463; *Kihlberg* v. *United States*, 97 U. S., 398; *Smith* v. *Briggs*, 3 Denio, 73; *Butler* v. *Tucker, supra; Wyckoff* v. *Meyers*, 44 N. Y., 145; *Schenke* v. *Rowell*, 7 Daly, 286.)

None of the cases which point out and enforce exceptions to the general rule, to wit: *Thomas v. Fleury* (26 N. Y., 26), *Smith v. Brady* (17 N. Y., 172), *Smith* v. *Wright* (4 Hun, 652), and *Bowery Bank* v. *Mayor* (63 N. Y., 336), have gone the length to hold that, in the absence of bad faith or fraud, or where there has not been an *unreasonable refusal to give any certificate whatever*, the courts can permit the judgment of an umpire or engineer, when expressed in his certificate actually given under the terms of the contract, to be tried and determined by suit.

In this case the certificates required by the contract were actually given by the engineer. His good faith is not sought to be impugned, nor is there any charge of fraud made against him, or collusion between him and the other contracting parties. All that is sought is to establish that his determination that certain portions of the masonry were rubble range masonry was a mistake, and that certain portions were cut range was also a mistake. It was attempted to be shown upon the trial that his determination of those questions was erroneous in fact. The court below ruled that under the circumstances of this case that could not be done. That ruling in our opinion is sustained by the authorities, and is sound both in principle and law.

We have looked carefully into the exceptions taken in the course of the trial, and are of opinion that none of them is well taken. This, of course, depends upon the correctness of the decision of the principal question. If the court were right in that, these questions became indifferent in their character, and do not entitle the plaintiffs to a new trial. Without entering into a consideration of each exception separately, we think it quite enough to say that they seem to us to depend upon, and to stand or fall with the principal question already considered.

The result is that the motion for a new trial ought in our opinion to be denied, and judgment ordered for the defendant upon the verdict.

BRADY and BARRETT, JJ., concurred.

Motion for a new trial denied; judgment ordered for the defendant on the verdict.