Judgment reversed and new trial ordered, with costs to the plaintiffs to abide the event.

---

In the Matter of the Application of MAX WOLF for an order Requiring CHARLES P. CROSBY to pay over Moneys Received by him and Belonging to MAX WOLF.

*Proceedings to compel an attorney to pay over money — when all the members of the firm need not be made parties — the retention of the money for the settlement of a controversy is not a legal answer — interest, when chargeable.*

In an action for malicious prosecution, brought by the present applicant, Max Wolf, against Henry Elias in the City Court of Brooklyn, which was commenced on the 23d day of April, 1881, by the law firm of Daily & Crosby, who were the attorneys and counsel of the plaintiff in that action, a judgment was recovered by the plaintiff which was paid on July 11, 1881, by a check for $1,155.53 made and delivered to Charles P. Crosby, the other partner, Daily, being then in Europe. The firm name was indorsed upon it by Crosby, who received the money and converted the same to his own use except the sum of $250 thereof which was paid to the petititioner.

This proceeding was instituted in June, 1887, for an order requiring Crosby to pay over the balance of the money still remaining in his hands, which was claimed to be the sum of $895.63, after deducting a bill which had been rendered to the petitioner for services previously rendered by Daley, the other member of the firm, and by the firm itself. By the report of a referee appointed in this proceeding there was found to be due and owing to the petitioner the sum of $450.28, with interest, from January 1, 1882.

Upon an appeal from an order confirming the report and directing the payment of the sum found to be due by it, Crosby claimed that he was not the attorney of the petitioner in the litigation, and that he had not acted as his attorney or counsel in it.

*Held*, that this claim could not be sustained as he was a member of the firm of Daily & Crosby, and the firm appeared as the attorneys for the petitioner in that action; although the services were rendered personally by Daily, the other member.

An objection was taken by the appellant that the proceeding was defective on account of the omission to join Daily, the other partner, as a party to it.

*Held*, that the objection was not well taken, as it was not necessary to join all the members of the legal firm when the charge of misconduct was restricted to one of the individuals forming the firm.

The appellant claimed that his refusal to pay was made in good faith upon the claim that the balance of the moneys should be retained for the adjustment of the services performed by the firm, and also by Daily previous to its formation, for the petitioner.

*Held*, that while the court might, in its discretion at the first hearing, if this objection had been then taken, have dismissed the proceeding and left the petitioner to his action for the recovery of any balance that might be due to him, it would now be unjust to the petitioner to dismiss the proceeding on that ground for the reason that any action which should hereafter be instituted against the appellant, or against both members of this firm, would be barred by the statute of limitations.

*Matter of Mertian* (29 Hun, 459); *Case of Paschal* (10 Wall., 483) distinguished.

That the retention of money by an attorney in good faith, and for the settlement of a disputed controversy concerning his right to retain it, is not a legal answer to a summary proceeding of this description.

*Bowling Green Savings Bank* v. *Todd* (52 N. Y., 489) followed.

A summary proceeding of this character will be sustained, in order to enforce the payment of money by the attorney, collected by him in his official capacity, and also for his delivery of documents belonging to his clients and which he appears to have no authority for retaining.

*Matter of H*———— (87 id., 521); *Matter of Husson* (26 Hun, 130) followed.

By the order which was made Crosby was charged with interest upon the balance remaining in his hands, after deducting the amounts found to be owing to Daily and himself, and to the firm of Daily & Crosby, from the 1st of January, 1882.

*Held*, that, as, in this case, so much of the money as was necessary for that purpose should be applied to the payment of the petitioner's indebtedness to Daily, as well as of his indebtedness to the firm; and as that amount was uncertain, until the amount was determined by the referee, that the petitioner was only entitled to interest upon the balance from the 11th of June, 1887, when this proceeding was commenced.

APPEAL from an order, made at the New York Special Term overruling exceptions to the report of a referee, and confirming his

report and directing the payment by Charles B. Crosby, the appellant, of the sum of $630.93, besides costs and disbursements, to Max Wolf, the applicant, which order was entered in the office of the clerk of the city and county of New York on August 24, 1888.

*Wheeler H. Peckham*, for the appellant.

*Joseph Fettretch*, for the respondent.

DANIELS, J.:

It appeared in support of the application for the order that an action had been prosecuted in the City Court of Brooklyn by Max Wolf, the applicant, against Henry Elias, for a malicious prosecution. In that action the petitioner recovered a judgment for $1,000 damages, and $145.63 costs. This action was commenced on the 23d of April, 1881, and the law firm of Daily & Crosby were the attorneys and counsel of the plaintiff in the action. The appellant, Charles P. Crosby, was a member of this firm, which was formed on the 1st of February, 1880. And it was agreed between the partners in their articles of copartnership that all cases and matters of business which would come into the hands of the firm, or either of the same, after the 1st of February, 1880, should be carried on, concluded and closed for the joint and equal benefit of these two partners. The action for malicious prosecution was brought on account of the arrest of the petitioner in a criminal proceeding on the 31st of August, 1880. It was continued from time to time to the 4th of April, 1881, when the petitioner was discharged, and the recovery of the verdict and judgment in the City Court of Brooklyn was obtained because of this prosecution being unfounded and malicious. A still earlier litigation existed between the defendant in the petitioner's action and his partner Betts for the settlement of differences between them as copartners. An adjustment of those differences appears to have taken place, and, as a part of the agreement then made, payment of the judgment recovered against the defendant in the petitioner's action was required to be made. On the 11th of July, 1881, John F. Betts, one of these partners, made and delivered his check to Charles P. Crosby, of this firm of Daily & Crosby, for the payment of the judgment, amounting at that

time to the sum of $1,155.53. The other copartner, Daily, was in Europe at the time when this check was made and delivered. The firm name was indorsed upon it by Mr. Crosby, the appellant, and the moneys represented by the check were paid by the bank to him. And no part of the proceeds beyond the sum of $250 was ever paid to the petitioner, but, on the contrary, the appellant appropriated the residue of these moneys to his own use. The business remained in this situation until the 4th of April, 1887, when the petitioner, in writing, demanded of the appellant the payment to him of the sum of $895.63 as the balance still remaining owing to him. No part of the moneys were paid over to the petitioner, but payment was refused by the appellant, and this proceeding was instituted in the early part of the month of June, 1887, for an order requiring the appellant to pay over the balance of the moneys still remaining in his hands, after deducting a bill which had been rendered to the petitioner for services previously rendered by Daily, the other member of the firm, and by the firm itself. The appellant claiming, by his answer to the petition, that no amount of money in this manner paid to him was payable to the petitioner, a reference was directed to a referee to take proof and report it with his opinion to the court. This order of reference was made without objection on the part of the appellant, and the referee took the proof which was offered, and with his report returned it to the court. By his report he found to be due and owing to the petitioner the sum of $450.28, with interest from January 1, 1882, amounting in the whole to the sum of $625. This was the balance arrived at after deducting what was found to be owing to Daily and Daily & Crosby for their preceding legal services; and with interest and the disbursements it was ordered to be paid.

The order has been objected to on the ground that Mr. Crosby, the appellant, was not the attorney of the petitioner in the litigation. And the petitioner testified that he did not employ the appellant, and that the latter had not acted as his attorney or counsel in the litigation. But what the petitioner evidently intended by this evidence was, that he did not personally employ the appellant, and that the latter did not act in the litigation. But that he was one of his attorneys in this litigation is proved by the other evidence taken in the course of the proceedings, for he employed

the other copartner, who had previously done business for him. And that employment of him for the commencement and prosecution of the suit in the City Court of Brooklyn was as a member of the firm of Daily & Crosby. And the firm appeared as the attorneys for the petitioner in the action, although the services themselves were rendered personally by Daily, the other member. And under the articles of copartnership made between these two persons, the appellant was entitled to the benefit of this employment and of the rendition of these services as part of the partnership business. Both the employment and the performance of the services were that of the firm, although arising out of the authority conferred upon Daily himself. And it rendered the appellant one of the attorneys for the petitioner in the proceedings although he was not specially employed or acted as such. When Daily left the city of New York for Europe the business was under the charge of the appellant as the other member. And it was with him, in that capacity, that the final settlement of the judgment recovered in the City Court of Brooklyn took place. The check was delivered to him. He indorsed it and obtained the money. And with the exception of the payment made to the petitioner soon afterwards, he appropriated and used the money for his own benefit. He had, at that time, been an attorney of this court for upwards of fifteen years. And that he received the money in this capacity is supported by the facts already stated.

The objection was taken that the proceeding was defective, on account of the omission to join Daily, the other partner, as a party to it. And authorities have been cited which have been urged in support of this objection. But they do not support it, for in these cases actions were brought to enforce obligations which were the joint liabilities of the firms. (*McFarland* v. *Cary*, 8 Cow., 253; *Taylor* v. *Bates*, 5 id., 376; *Green* v. *Milbank*, 3 Abb. N. C., 138.) Neither these cases, nor any others which have been consulted, support the objection that in a proceeding of this nature it will be necessary to join all the members of the legal firm, when the charge of misconduct may be restricted to one of the individuals forming the firm.

The proceeding against the appellant was founded upon his own individual appropriation of these moneys, no part of which was

passed over to his partner, and his refusal to pay over any part of them to the petitioner. It was to redress the wrong charged wholly against the appellant; and, to secure that redress, the other partner was not a necessary or proper party. This refusal of the appellant to pay is stated to have been made in good faith, upon the claim that the balance of the moneys should be retained for the adjustment of the services performed by the firm, and also by Mr. Daily, previous to its formation, for the petitioner. But the fact that this claim was made in good faith is no answer to this proceeding. It might have induced the court, in its discretion, at the first hearing, if the objection had then been taken, to dismiss the proceeding and leave the petitioner to his action for the recovery of any balance that might be due to him out of these moneys. But that does not seem to have been asked for at the time; for the order of reference appears to have been made without any resistance or objection on behalf of the appellant; and it would now be unjust to the petitioner to dismiss the proceeding on this ground, for the reason that any action which should be hereafter instituted against the appellant, or against both members of this firm, would be barred by the statute of limitations. (Code of Civil Pro., § 410.) To turn the applicant out of court at this time, therefore, would be to deprive him of all remedy for the recovery of any balance owing to him; and that certainly should not be done as long as this objection was not raised at the time when he was at liberty to proceed by action. The case, accordingly, is not within anything that was said in *Matter of Mertian* (29 Hun, 459). The Case of *Paschal* (10 Wall., 483) is an authority in support of the objection only under ordinary circumstances, but not upon the facts here presented, which would deprive the petitioner of all redress in case he should be held, for this reason, to fail in this proceeding. But that authority, even under ordinary circumstances, has not been followed in this State, where it is held to be the law that the retention of the money by the attorney in good faith, and for the settlement of a disputed controversy concerning his right to retain it, is not a legal answer to a summary proceeding of this description. (*Bowling Green Savings Bank* v. *Todd*, 52 N. Y., 489.) This case sanctions and supports the right of the creditor to resort to a summary proceeding to ascertain the amount to which he may be entitled of the moneys

received, and to enforce the payment of that amount by an order of the court. The proceeding has been sustained upon the ground that the attorney acts as an officer of the court, and that it is its duty to enforce the claims and demands of justice between its officers and other persons employing and dealing with them in this manner in their official capacity. This authority has been followed in *Matter of Knapp* (85 N. Y., 284), and *Matter of Chittenden* (4 N. Y. St. Rep., 606; affirmed on appeal, 105 N. Y., 679), and the proceeding has been sustained, not only to enforce the payment of money by the attorney, collected by him in his official capacity, but also for the delivery of documents belonging to his client, and which he appears to have no authority for retaining. (*Matter of H.*, 87 N. Y., 521; *Matter of Husson*, 26 Hun, 130.)

The case of Forster is so distinguishable in its important facts as to be entitled to no control over the decision of this controversy, for there, warrants which had been received, and which it was the object of the proceeding to require the attorney to deliver to the clients, had been obtained under the decisions of the Court of Commissioners of Alabama Claims. That court was created and continued by the laws of congress, and the attorneys appearing and practicing there were specially admitted for that object by the court itself. On receiving the warrants, therefore, the attorney in that case did not act as an attorney of this court, but of the Court of Alabama Claims, and he could very well be exonerated, as he was by the prevailing decision, from liability to a proceeding in this court, to compel him to deliver the warrants to the respective claimants. The conduct drawn in question was not that of an officer of this court, but it was that of an officer of the Court of Alabama Claims, and for that he was not accountable in the proceeding which was taken against him. But this case depends upon an entirely different state of facts, for in commencing and prosecuting the action in the City Court of Brooklyn the attorneys acted under the authority vested in them as attorneys of the Supreme Court. They required no admission to practice in the City Court in order to commence and prosecute the action there; but under the laws of this State were entitled to do so by virtue of and as a result of their admission to practice in this court. Besides that, when the money was paid over the proceeding in the City Court of Brooklyn had been entirely consummated.

The judgment had been recovered, and the money was not obtained upon any process or order issuing out of the City Court of Brooklyn, but it was voluntarily paid and received by the appellant solely and only in his capacity of attorney and as a member of the firm of Daily & Crosby. And it was received by him, in fact, so far as a balance remained payable to the petitioner as his attorney, and for that he became accountable in this proceeding, the same as he would if demands had been delivered over to him for collection, and they were afterwards voluntarily paid to him by the debtors. In that class of cases, under the authorities which have already been mentioned, the jurisdiction of this court, by a summary proceeding to compel the payment of the money by the attorney, is fully sustained; and the principle upon which it has been so sustained is entirely applicable to this proceeding, for there can be no substantial distinction between the case of the collection of accounts and demands by the attorney, and the collection of this money which was voluntarily paid over to him by the partner of the defendant in the action, for the purpose of satisfying and extinguishing the judgment. To hold that the attorney might be summarily proceeded against in the former case while he could not in the latter would be materially to abridge the utility of a proceeding which the courts have sustained for the purpose of obliging their officers to deal justly with the persons employing them, and under whose authority they may act in collecting and receiving money. The courts have created no such distinction, neither is anything to be found, even by way of intimation, in the authorities which would support or sustain it.

By the order which has been made the attorney was charged with interest upon the balance remaining in his hands, after deducting the amounts found to be owing to Daily himself and to the firm of Daily & Crosby, from the 1st of January, 1882. The charge of interest does not seem to be supported to this extent by the authorities, for in this case so much of the moneys which were received by the appellant, as were necessary for that purpose, should be applied and appropriated to the payment of the petitioner's indebtedness to Daily as well as his indebtedness to the firm. And what that amount should be was left in a state of dispute and uncertainty, Mr. Daily himself made out an account in which the entire indebtness was stated to be the sum of $279.23. But the petitioner

considered that to be too small to compensate them for the services which they had rendered. And so it was found to be by the referee upon evidence justifying the conclusion formed by him, for he reported the amount in the aggregate which should be allowed against the petitioner at the sum of $455.13. This valuation was adopted by him as the fair result of the evidence. And such it probably was, affording both to Mr. Daily and the firm a reasonable remuneration for their services and disbursements in the preceding litigation as well as in the action in the City Court of Brooklyn. But until this amount was in this manner settled and the dispute concerning it determined, no specific sum of money was payable to the petitioner. He might have obtained an earlier adjustment of it if he had been disposed so to do. But he neglected to take any proceedings for that object. And it was not the duty of the appellant to resort to them, for the reason that he claimed that his firm and Mr. Daily should have the entire balance of the moneys appropriated to the payment of their services and disbursements. In this state of the facts the petitioner was not entitled to interest upon the balance from the 1st of January, 1882, but was only entitled to it from the 11th of June, 1887, when this proceeding was commenced. (*Kane* v. *Smith*, 12 Johns., 156; *McMahon* v. *N. Y. and Erie R. R. Co.*, 20 N. Y., 463, 470; *McCollum* v. *Seward*, 62 id., 316, 318; *Smith* v. *Velie*, 60 id., 106.)

The order, accordingly, should be modified by charging the appellant with the balance of $450.28 found by the referee, and interest upon it from the 11th of June, 1887, instead of from the 1st of January, 1882, and as modified in that manner the order should be affirmed, without costs to either party.

Bartlett, J., concurred; Van Brunt, P. J., concurred in the result.

Order as modified affirmed, without costs to either party.