Bernard S. Meyer, J.
In the Daedalian ■ labyrinth of “ contract documents ” that constitutes the agreement between petitioner and respondent lurks a contractual monstrosity equally as fabulous as the mythological Minotaur — the arbitration provisions of that agreement. Petitioner school board entered into an agreement with respondent, an electrical contractor, for the electrical work on 17 buildings constituting new junior and senior high schools. The contract documents include Drawings and Specifications, Notice to Contractors, Instructions to Bidders, Proposal, Contract, General Conditions Governing All Contracts and the Standard Form of the American Institute of Architects which the General Conditions amend and supplement. A number of the provisions of those documents concern the procedure for the determination of claims. The contract of January 3, 1956 between the parties contains the following provision:
*877 article 11. Arbitration —
In the event that any disagreement shall arise between the parties hereto and in the event that either of the parties is not satisfied with the decision of the Architect, then the dispute shall be settled by arbitration. Each party shall, upon five (5) days written notice from the other, select one arbitrator and the two arbitrators so selected shall select a third arbitrator and the decision of a majority of the arbitrators shall be binding upon both of the parties hereto when submitted to them in writing by the arbitrators. Each of the parties shall .pay for one-half of the cost of the arbitrators. Arbitration shall be had in accordance with the terms of the General Conditions. The place of arbitration, however, shall be the City of New York.
The General Conditions Governing All Contracts include: — Article 38, defining the Architect’s Status, which provides in part as follows:
As the Architect is, in the first instance, the interpreter of the conditions of the Contract and the judge of its performance, he shall side neither with the Owner nor with the Contractor, but shall use his powers under the contract to enforce its faithful performance by both;
Article 39, entitled “Architect’s Decisions”, reading as follows:
The Architect shall, within a reasonable time, make decisions on all claims of the Owner or Contractor and on all other matters relating to the execution and progress of the work or the interpretation of the Contract Documents.
The Architect’s decisions, in matters relating to artistic effect, shall be final, if within the terms of the Contract Documents.
Except as above or as otherwise expressly provided in the Contract Documents, all the Architect’s decisions are subject to arbitration.
If, however, the Architect fails to render a decision within ten days after the parties have presented their evidence, either party may then demand arbitration. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but shall not disturb or interrupt such proceedings except where such decision is acceptable to the parties concerned.
Article 40, entitled ‘ ‘ Arbitration ’ ’, reading as follows:
All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedures of The American Institute of Architects, and this Agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other.
The Contractor shall not cause a delay of the work during any arbitration proceedings, except by agreement with the Owner.
Notice of the demand for arbitration of a dispute shall be filed in writing with the Architect and the other party to the contract. If the arbitration is an appeal from the Architect’s decision, the demand therefor shall be made within ten days of its receipt; in any other case the demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no ease, however, shall the demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract.
*878 The arbitrators, if they deem that the ease requires it, are authorized to award to the party whose contention is sustained, such sums as they or a majority of them shall deem proper to compensate him for the time and expense incident to the proceeding and, if the arbitration was demanded without reasonable cause, they may also award damages for delay. The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the proceedings upon either or both parties.
(a) Notwithstanding requirements of Article 40 to contrary, arbitration shall be had only during course of construction work of each Contract, until substantial completion of work, in City of New York, be governed by pertinent provisions of American Arbitration Association, State of New York, by 3 arbitrators : Contractor, Architect, and an Engineer.
(b) No traveling fees and expenses of witnesses shall be charged to either party to dispute nor shall arbitrator fix his own compensation.
Article 45, entitled “ Cooperation- ”, subparagraph (c) of which reads as follows:
It is agreed that in event of any dispute arising as to possible or alleged interference among various Contractors which may retard progress of work, same shall be adjusted by Architects whose decision as to parties at fault and as to manner in which matter may be adjusted shall be binding and conclusive on all parties.
On September 3, 1958 respondent demanded arbitration of (1) its claim for damages of $312,477.28 sustained by delays and interferences by reason of acts of the respondent board, failure of the board to co-ordinate work of contractors and acts of other contractors, and (2) specified extras totaling $11,979.67. The Appellate Division reversed the denial of a stay of that arbitration (8 A D 2d 940) in a memorandum decision stating (1) that section 3813 of the Education Law “ must be deemed to be part of the terms of the contract ” and (2) that the contract did not provide for arbitration of “ acts of the other contractors.” The Court of Appeals affirmed (7 N Y 2d 476) the ruling that section 3813 applied. Its decision contained the following analysis: “ Under the statute, the contractor must present his claim to the Board of Education within three months after its accrual, and the board is given 30 days in which to arrive at a decision. Under the contract, if the decision of the board is adverse to the contractor, he may submit the dispute to the architect (art. 39). And, if he is dissatisfied with the architect’s decision, he is privileged to seek arbitration, but ‘ the demand therefor shall be made within ten days ’ of the receipt of the decision (art. 40). As is manifest, neither the provision of the contract for the architect’s decision of disputes nor the provision for an ‘ appeal ’ therefrom to arbitration, comes into effect until the contractor first presents his basic claim to the board pursuant to section 3813. * * * The 30-day period afforded the board for consideration of the claim occurs before the matter *879 is presented to the architect for decision, while the 10-day period within which arbitration must be demanded begins to run only after the architects’s decision” (p. 483; emphasis in the original).
Alerted by the board’s original motion, respondent on October 16,1958, while the motion for a stay was pending, filed notice of claim with the board covering the identical items referred to in the first demand for arbitration, and on November 20,1958, more than 30 days having elapsed, again demanded arbitration of its claim. The board moved for a stay of the second demand and this court held the claim for damages for delay barred by the Appellate Division’s ruling that under the contract it was not arbitrable, and the claims for extras not properly presented because it did not appear, when the items making up the claim accrued and, therefore, it did not appear that the claim was presented to the board “ within three months after the accrual of such claim ” (20 Misc 2d 1030, 1031). An order was, therefore, entered on August 17, 1959, staying arbitration of the second demand. In neither of the prior proceedings for a stay was it argued that under the contract a decision by the architect is a condition precedent to arbitration before the American Arbitration Association (Matter of Elora Realty [William Savage, Inc.], 305 N. Y. 842).
On July 14, 1959 respondent filed a further claim with the board for (1) final payment of $16,669.40 due under the contract, and (2) $48,000 in bonds deposited by it at the time of contracting as security for performance. It also appealed from the August 17, 1959 order but withdrew that appeal after the Court of Appeals decision on the first demand. On April 18, 1960 respondent submitted to the architects for decision the claims presented to the board by the notices of October 16, 1958 and July 14,1959, acknowledging in its letter of submission that the final payment of $16,669.40 claimed in the July 14, 1959 notice included the extras of $11,979.67 referred to in the October 16, 1958 notice. For the third time the board, by the present motion, seeks a stay. Respondent points to the requirement of article 40 (a) quoted above, that arbitration may be had “ only during course of construction work to the fact that construction is now ended, and to the differentiation in the Appellate Division and the Court of Appeals decisions between arbitration and the architect’s decision, and says that it does not now seek arbitration but rather a decision by the architects as a prelude to an action at law. The board answers that the architects’ decision is itself arbitration, that arbitration of the various claims has been stayed by the August 17, 1959 order, that arbitration may *880 not be had until respondent properly complies with section 3813, and that the claim based on delay is too vague and uncertain to be arbitrable. A third stay must be granted; respondent has not yet discovered the Ariadne’s thread that will assure its safe return from this contract maze.
The malformation from which the procedural scheme set forth in the above-quoted articles suffers is not only the engrafting of inconsistent and contradictory provisions upon one another; that difficulty may be expected to respond to the solvent of constructional rules (by whom were the provisions drafted, which is printed and which typed or handwritten, etc.). The core of its deformity, however, is its use of a generic term to apply to only one specific part of a procedure all of which fits within the generic; arbitration as a legal procedure encompasses both the architects’ determinations and those of the board established by the specific “ arbitration ” provisions of the contract. If this analysis is correct,, then both petitioner and respondent are incorrect; respondent, because the submission to the architects is part of the special proceeding covered by section 3813; petitioner, because all that the previous orders stayed was arbitration in the specific contract sense, not a submission to the architects.
Neither party has seen fit to incorporate in its papers details concerning contract negotiations. Such details would, however, have relatively little bearing on the determination whether the foregoing analysis is correct; primarily, that is a function of comparing- the language of the provisions as written with basic arbitration law. Making such a comparison in Gold Plastering Co. v. 200 East End Ave. Corp. (282 App. Div. 1073, 1074, affd. 307 N. Y. 668) the Appellate Division, Second Department, said, with respect to articles 38, 39 and 40 of the American Institute of Architects General Conditions: ‘ ‘ While the architect is not referred to as an ‘ arbitrator ’ in the ‘ General Conditions ’, and his decisions are made subject to ‘ arbitration ’ thereby, it is our opinion that the proceedings before the architect contemplated by article 39 of the ‘ General Conditions ’ are part of a general scheme for arbitration of disputes, and that such proceedings constitute ‘ arbitration ’ within the meaning of article 84 of the Civil Practice Act, of which sections 1450 and 1451 are a part.” As the cases cited by the Appellate Division in support of that statement show the distinguishing features are (1) whether the submission to the architect, engineer or other third person is of the entire dispute or only of a particular matter not designed to terminate the whole controversy and (2) whether the parties intended that the submission be determined in a quasi-judicial *881 fashion, evidence being taken and argument heard. (See, also, Matter of Delmar Box Co. [Ætna Ins. Co.], 309 N. Y. 60; Garr v. Gomez, 9 Wend. 649, 658, 661; 10 N. Y. Jur., Contracts, § 155, p. 49; Sturges, Commercial Arbitrations and Awards, pp. 64-66.) The law will imply a requirement that evidence be taken and argument heard by an architect or engineer who is to act as arbitrator (McMahon v. New York & Erie R. R. Co., 20 N. Y. 463, 466; Bertram Garden Apts. v. De Martini, 108 N. Y. S. 2d 483), and the fact that the contract provides for his so doing is indicative of an intent to constitute the architect or engineer an arbitrator. The final paragraph of article 39, permitting ‘ ‘ arbitration 5 ’ if the architect ‘ ‘ fails to render a decision within ten days after the parties have presented their evidence ” evidences such an intent. Nor can it be said, as was held in the Gold Plastering case, that the submission in the instant case includes items which the parties had not agreed to submit to the architect. In the first place, article 11 of the January 3, 1956 contract (for which there is no counterpart in the Gold Plastering contract) contemplates that “any disagreement” shall be submitted to “ the decision of the architect ”. Secondly, the claim for extras, for final payment and for return of the bonds posted as security all relate 1 ‘ to the execution and progress of the work”, and are thus within article 39 of the General Conditions, and the claim for delay is specifically covered by article 45 (c) of the General Conditions, a provision not included in the Gold Plastering contract. While the last item is a claim for breach of contract, article 45 (c) provides that the architects are to determine the ‘1 manner in which matter may be adjusted ”, thus empowering them to adjudicate the breach and “ to assess the damages as well ” (Matter of Morris White Fashions [Susquehanna Mills], 295 N. Y. 450, 456; see, also, Gioia v. Gioia, 171 Misc. 683, 686, affd. 257 App. Div. 920). In Matter of Rosato (Goldpure, Inc.) (N. Y. L. J., May 15, 1957, p. 9, col. 8, affd. 6 A D 2d 877) an earlier edition of the same General Conditions was considered. While Special Term in that case concluded that the architect was not empowered to finally determine and assess damages under article 31 of the General Conditions, it recognized the architect’s position in the procedure established by the General Conditions as a form of arbitration. On the damage point Matter of Rosato is readily distinguishable from the instant case for the Rosato contract, so far as appears from the Special Term decision, contained no provision comparable to either article 11 of the January 3, 1956 contract or article 45 (c) of the General Conditions.
*882 The letter of April 18, 1960 is, therefore, a submission to arbitration before the architects. (Farrell v. Levy, 139 App. Div. 790, 792; Sturges, op. cit. supra, p. 33; 54 A. L. R. 1255, 1256.) Moreover, none of the prior proceedings stay that submission. The Court of Appeals was considering only arbitration in the specific contract sense; submission to the architect was only incidentally referred to by it. The Appellate Division’s holding that “ acts of the other contractors ” is not an arbitrable item indicates that it was using the word 1 ‘ arbitration ” in the contract rather than the generic sense, for, it would appear from the briefs before it, that holding was based upon the fact that article 45 (c) made the architect’s decision on such a dispute final and conclusive. This court’s stay of the November 20, 1958 demand was likewise based on the specific rather than the generic meaning of “ arbitration ”.
While the prior proceedings do not mandate a stay of the April 18,1960 submission, section 3813 (subd. 1) of the Education Law does. Under that section not only must a claim be presented to the board more than 30 days prior to the submission to the architects, but also “ it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district within three months after the accrual of such claim”. (Emphasis supplied.) In the light of the Court of Appeals’ decision that section 3813 is applied as a matter of statutory policy rather than contract interpretation, the contrary reasoning, in this court’s prior decision (20 Misc 2d 1030, 1031) is no longer valid. The absence of such allegations in the April 18, 1960 submission is, therefore, fatal. (Todd v. Board of Educ., 297 N. Y. 873; Thomann v. City of Rochester, 256 N. Y. 165, 172.) Until respondent presents a submission containing the allegation required by the statute, it is unnecessary to consider when the various claims asserted in the October 16, 1958 and July 14, 1959 notices accrued.